GENERAL MOTORS CORPORATION *v.* UNEMPLOYMENT COMPENSATION COMMISSION.

CLAIM OF ROSE.

1. UNEMPLOYMENT COMPENSATION—DIE SINKERS—SEPARATE UNIT—WORK STOPPAGE—DISQUALIFICATION FOR BENEFITS.

Die sinkers who were organized as a separate union from those employees who prepared rough die blocks and others who later shaped the die blocks, and which die sinkers had their own particular section of a building and carried on their operations separate and distinct from the other employees in the building, and which separate union had been recognized as an appropriate unit for collective bargaining and whose rate of pay, hours of work and other conditions of employment varied from those of other employees working on the die blocks *held,* a separate and distinct unit under provisions of the unemployment compensation act relative to disqualification for benefits where work stoppage is due to a labor dispute (Act No. 1, § 29, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts 1943).

2. SAME—DISQUALIFICATION FOR BENEFITS—CONSTRUCTION OF STATUTES.

Provision of unemployment compensation act disqualifying individuals for benefits because of involvement in labor dis-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am. Jur., Social Security, Unemployment Insurance and Retirement Fund, § 36.

[1, 2] Circumstances of leaving employment, availability for work, or nature of excuse for refusing re-employment as affecting right to unemployment compensation. 158 A.L.R. 396; 165 A.L.R. 1382.

[1, 2] Provisions of Unemployment Compensation Act as to disqualification for benefit because of labor disputes. 135 A.L.R. 920; 148 A.L.R. 1309; 154 A.L.R. 672.

[3] 50 Am. Jur., Statutes, §§ 377, 378.

putes is construed as inoperative to disqualify employee because of work stoppage if there is no labor dispute in the particular establishment or department or unit in which he was then employed (Act No. 1, § 29, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts 1943).

3. Statutes—Construction—Absurdity.

Unless necessary, statutes should not be so construed as to result in absurdity.

Appeal from Ingham; Hayden (Charles H.), J. Submitted April 9, 1948. (Docket No. 45, Calendar No. 44,050.) Decided June 14, 1948. Rehearing granted September 8, 1948. See opinion on rehearing, *post*, 724.

Certiorari by General Motors Corporation to review award of Appeal Board of the Michigan Unemployment Compensation Commission granting compensation to Ahira H. Rose, Jr. Order reversing award. Defendant Rose appeals. Judgment of circuit court disallowing benefits reversed and remanded for entry of judgment affirming award.

*Henry M. Hogan* (*E. V. Gilliland,* of counsel), for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Arthur W. Brown,* Special Assistant Attorney General, for Michigan Unemployment Compensation Commission.

*Maurice Sugar, Ernest Goodman* and *Morton A. Eden,* for defendant Rose.

*Amici curiae* on application for rehearing:

*Beaumont, Smith & Harris* (*Frank E. Cooper,* of counsel), for Michigan Manufacturers' Unemployment Compensation Bureau, Inc.

*William T. Gossett* (*Malcolm L. Denise* and *Richard A. Fellrath,* of counsel), for Ford Motor Company.

North, J. This case involves the right of defendant and appellant, Ahira H. Rose, Jr., to unemployment compensation. For many years he was in the employ of plaintiff, General Motors Corporation, as a die sinker. Due to a UAW–CIO strike in November, 1945, Rose and some 40 or 50 other die sinkers were temporarily out of employment. Later Rose applied for unemployment compensation for the period during which he was out of work. At hearings before the unemployment compensation commission, the referee, and the appeal board, it was held that Rose was entitled to compensation. On certiorari to the circuit court by plaintiff employer, Rose was denied compensation and he has appealed.

Whether, under the facts of this case, defendant-appellant Rose is entitled to unemployment compensation must be determined under the provisions of the Michigan unemployment act. Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended, to and including Act No. 246, Pub. Acts 1943. Section 29 of the act as amended in 1943 * is the part of the act particularly applicable to the instant case. In part it reads as follows:

"Sec. 29. * * * An individual shall be disqualified for benefits:  * * *

"(c) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed: *Provided, however,* That no individual shall be disqualified under this section if he shall establish that he is not directly involved in such dispute. For the purpose of this section, no individuals shall be deemed to be directly involved in a labor dispute unless it is established:  * * *

"(4) That at any time, there being no labor dispute in the particular establishment or department

* Comp. Laws Supp. 1945, § 8485-69, Stat. Ann. 1946 Cum. Supp. § 17.531.—Reporter.

or unit in which he was then employed, he shall have become unemployed because of a stoppage of work which was directly caused in his particular establishment or department or unit by and solely because of a stoppage of work due to a labor dispute which was then in progress in some other establishment or department or unit of the same employing unit by whom he was then employed."

Decision herein involves consideration of two questions: (1) Did the 40 or 50 die sinkers constitute a particular or distinct unit; and (2) was the stoppage of work in that unit directly and solely caused by a labor dispute which was then in progress in some other department or unit of the same employing unit by whom Rose was then employed?

Our review of the record discloses that a sufficiently accurate statement of the relevant facts is set forth in the following which we quote from plaintiff's petition for certiorari:

"Fifth: During the entire period in question and for 23 years prior to November 21, 1945, claimant was employed by the corporation's Chevrolet gear and axle division and was a member of and was represented by a duly established and recognized union known as the International Die Sinkers Conference. Claimant is a 'die sinker' by craft and worked in what is known as the forge plant No. 1, die room. This is a separate building, and it is utilized for the making of new dies. Rough die blocks are delivered to this building and planed by employees represented by the UAW–CIO. After delivery and this preparatory operation, the 'die blocks' are sent to the 'impression section' of the die room where claimant and 40 to 50 other die sinkers (who were also members of the International Die Sinkers Conference) lay out, cut, and sink the die impressions in the blocks. After the die impressions are completed, the die blocks are shaped (by employees represented by the

UAW–CIO) and they are then ready for actual use in the forge plant.

"Claimant and the other die sinkers have their own particular section of the building, their own particular machines, and carry on their operations entirely separate and distinct from the other employees in the building. They are the only ones who make or work on the die impressions. The employees represented by the UAW–CIO merely perform certain preparatory and finishing operations on the block—not on the die impression. Furthermore, the die sinkers are the only ones who work on the block while it is in the 'impression section,' and the making of one impression may require a week or more. They work as a separate and distinct unit, and their stoppage of work was caused by separate and distinct functions (performed by UAW–CIO employees) such as furnishing power, delivery of new blocks, and removal of the finished product, and within a few days their work would have been without purpose as the employer had no use for their product except in the forge plant which was closed by striking UAW–CIO employees. * * *

"There was also complete agreement that claimant's union, the International Die Sinkers Conference, was a separate and distinct labor or craft organization; that the die sinkers were recognized as an appropriate unit for collective bargaining; that they have been so recognized since 1938; and that they were in no way connected with the UAW–CIO.

"It further appeared from the testimony that they are paid by a bonus system and not on an hourly rate like the UAW–CIO and that their rate of pay, hours of work, and other conditions of employment have and still vary in several respects from that accorded to the UAW–CIO employees."

From the proof of the foregoing and other facts appearing in the record we conclude that both in respect to their organization and their operations as employees, the die sinkers constituted a separate

and distinct unit. Further, that there was no labor dispute within that unit, and that stoppage of work in the die sinkers' unit was solely because of a stoppage of work due to a labor dispute in another department or unit of the same employer.

Our construction of section 29(c), paragraph (4), is not in accord with that of either the employer, or the employee and the commission. Paragraph (4), under subdivision (c), of section 29, was added by the 1943 amendment to the preceding paragraphs (1), (2) and (3) of subdivision (c)\*. It is too obvious for argument that in amending the statute there was carelessness in the wording and structural arrangement of the context which has led to confusion and uncertainty. But we are convinced from the context and obvious purpose of section 29 that the intent of the legislature was to provide that an employee, who because of a labor dispute has been severed from his employment, should not be deemed to be directly involved in the labor dispute which brought about his unemployment unless it was established that at the time there was in his department or unit a labor dispute, provided the stoppage of work was directly caused in the employee's department or unit by and solely because of a stoppage of work due to a labor dispute which was then in progress in some other establishment or department

---

\* Paragraphs (1), (2) and (3) read as follows:

"(1) That, at the time or in the course of a labor dispute in the establishment in which he was then employed, he shall in concert with 1 or more other employees have voluntarily stopped working other than at the direction of his employer, or

"(2) That he is participating in or financing or directly interested in the labor dispute which caused the stoppage of work: *Provided, however,* That the payment of regular union dues shall not be construed as financing a labor dispute within the meaning of this subsection, or

"(3) That at any time, there being no labor dispute in the establishment or department in which he was employed he shall have voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or department in which labor dispute was then in progress."

or unit of the same employing· unit by whom the employee seeking compensation was employed. This intended meaning of the amendment would have been clear had the word "if" been substituted for the word "unless" in a prefatory sentence. It would then have read: But unless they are directly involved under the preceding paragraphs (1), (2) or (3) (which is not claimed on this appeal), "no individuals shall be deemed to be directly involved in a labor dispute *if* (not unless) it is established: * * * (4) That at any time, there being no labor dispute in the particular establishment or department or unit in which he was then employed, he shall have become unemployed because of a stoppage of work," in the manner provided in the remaining portion of paragraph (4) above quoted.

Our conclusion is that paragraph (4), subdivision (c), of section 29, was clearly intended by the legislature to be, and should be construed to be, an additional limitation of what otherwise might be a disqualification of an employee seeking unemployment compensation. Each of other constructions urged or suggested lead to an absurd result. "Unless necessary, statutes should not be so construed as to result in absurdity." *People, ex rel. Simmons,* v. *Township of Munising,* 213 Mich. 629.

Under the construction of the statutory provision hereinbefore indicated, appellant Rose was and is entitled to unemployment compensation as held by the commission. The judgment of the circuit court is reversed and the case remanded to the circuit court for entry of judgment affirming the holding of the unemployment compensation commission and a remand of the case thereto. Appellant Rose will have costs of both courts.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETHMERS, and CARR, JJ., concurred.

BUTZEL, J., did not sit.