## WINTER *v.* STATE HIGHWAY COMMISSIONER.

1. Highways and Streets — Excess Property — Oil and Gas Rights.

State highway commissioner had authority to lease oil and gas rights in property to which he had acquired fee simple title without reservation of oil and gas rights by former owners when they conveyed to him under threat of condemnation in the course of constructing a limited access highway, since he may dispose of property acquired in excess of needs for State highway purposes, the fact that oil and gas rights were excluded from other parcels acquired for the same project having no legal significance (Const 1908, art 13, § 1; CL 1948, §§ 213.172, 213.194; CLS 1961, §§ 252-.52, 252.53).

2. Same — Discretion of Officer — Excess Property — Eminent Domain.

A question relating to the abuse of discretion of State highway commissioner in acquisition of more property than was necessary for use for highway purposes could arise only in the exercise of the power of eminent domain involving an involuntary surrender of title (Const 1908, art 13, § 1; CL 1948, §§ 213.172, 213.194; CLS 1961, §§ 252.52, 252.53).

3. Same—Lease of Oil and Gas.

Lease of oil and gas rights in land acquired and used for limited access highway purposes executed by conservation department *held*, valid and within the scope of the fee estate which had theretofore been conveyed by plaintiffs to defend-

---

References for Points in Headnotes

[1–3] 18 Am Jur, Eminent Domain § 110.
[4] 14 Am Jur, Costs §§ 37, 91; 20 Am Jur 2d, Costs § 35; 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

ant State highway commissioner without reservation of oil and gas rights (Const 1908, art 13, § 1; CL 1948, §§ 213.172, 213-.194; CLS 1961, §§ 252.52, 252.53).

4. Costs—Public Question—Oil and Gas Rights in Limited Access Highway.

No costs are allowed in suit to quiet title, brought by grantors against State highway commissioner, in order to declare deed of land acquired and used for limited access highway purposes and conveying fee simple title void or corrected to convey surface rights only' and to declare plaintiffs owners of oil and gas discovered or found upon property involved, a public question being involved (Const 1908, art 13, § 1; CL 1948, §§ 213.172, 213.194; CLS 1961, §§ 252.52, 252.53).

Appeal from Calhoun; Magnotta (Alfonso A.) and Coleman (Creighton R.), JJ. Submitted January 5, 1965. (Calendar No. 1, Docket No. 50,395.) Decided June 7, 1965.

Bill to quiet title by Elmer C. Winter and Frieda Winter against John C. Mackie, State Highway Commissioner, Michigan Department of Conservation, and the Marathon Oil Company, formerly The Ohio Oil Company, an Ohio corporation, to lands transferred by deed to the State Highway Commissioner. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Hatch & Hatch,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso* and *Jerome Maslowski,* Assistant Attorneys General, for defendant State Highway Commissioner.

*John W. Campbell, Jr.,* for defendant Marathon Oil Company.

T. M. Kavanagh, C. J. Plaintiffs filed a bill to quiet title in the Calhoun county circuit court on

September 27, 1960.  They prayed that a deed dated October 22, 1958, given by them to John C. Mackie, State highway commissioner, be declared void, or, in the alternative, that it be corrected to show only the rights the State of Michigan could take in said land, namely the surface rights for highway purposes only; that an oil and gas lease given by the conservation department of the State of Michigan to The Ohio Oil Company, as authorized by the administrative board of the State of Michigan, be set aside and held as void; and that plaintiffs be declared by decree to be the owners of all oil and gas that may be discovered or found upon the property involved.

Defendant State highway commissioner answered denying plaintiffs were entitled to the relief prayed. Defendant conservation department also answered denying that plaintiffs were entitled to the relief sought.

Defendant Marathon Oil Company in its answer prays that plaintiffs' bill to quiet title be dismissed; and in the event it is not dismissed, defendant prays that its oil and gas lease to the property be decreed to be a valid lease, alleging itself to be an innocent purchaser for value.

The principal facts upon which the suit was based were stipulated to by the parties and are as follows:

"Plaintiffs, prior to October 22, 1958, were the owners in fee simple of a farm described as the north 250 acres of the fractional section 19 of the township of Sheridan, Calhoun county, Michigan. In connection with the construction of an interstate highway (hereinafter called I–94) traversing the State of Michigan from the city of Detroit to the city of Benton Harbor, the defendant, John C. Mackie, State highway commissioner, determined that a strip of land 250 feet in width across the southern portion of plaintiffs' realty was needed for the right-of-way for I–94.  The 250-foot strip

consisted of approximately 19.5 acres of plaintiffs'
farm.

"The 250-foot strip was necessary for trunk line
highway and right-of-way purposes.

"In the planning, construction, and maintenance
of the proposed limited access highway, the State
highway commissioner had no need for any oil, gas,
or minerals underlying the 250-foot strip of land.

"Pursuant to the authority vested in the highway
commissioner under Michigan statutes, he sent rep-
resentatives of his office to visit plaintiffs. Plain-
tiffs were informed by these representatives of the
forthcoming highway construction over their land
and that plaintiffs could either sell right-of-way to
the State peaceably or the State would take it by
condemnation and that plaintiffs' damages would
be determined by commissioners. Plaintiffs entered
into an agreement with the highway commissioner
on October 22, 1958. Said agreement, being a war-
ranty deed from plaintiffs to defendant, John C.
Mackie, State highway commissioner, is recorded
in liber 762 of deeds at page 487, in the office of the
register of deeds for the county of Calhoun, State
of Michigan, and is made a part of this statement
of facts by reference thereto. * * * This deed
was prepared by the highway department and was
on a form deed used by said department.

"There was no discussion as to whether, by virtue
of said deed, they would lose any rights to oil and
gas under the highway right-of-way. Plaintiffs were
paid the sum of $1,925. The defendant, Marathon
Oil Company, was not a party to, and had no knowl-
edge of, negotiations conducted between plaintiffs
and representatives of the State highway commis-
sioner.

"In December, 1958, the first oil well in the Albion
field was discovered in Calhoun county, in Albion
township, which is directly south and adjoining
Sheridan township. * * *

"On November 11, 1958, plaintiffs entered into an
oil and gas lease with McClure Oil Company, which

lease was subsequently assigned to the defendant, Marathon Oil Company. McClure Oil Company paid plaintiffs a good and sufficient consideration for said lease. The description contained therein was prepared by said company and represents the parcel said company was interested in leasing, and what said company intended to lease. Said lease is recorded in liber 761 at page 539 of deeds, in the office of the register of deeds for the county of Calhoun, State of Michigan  *  *  *  .

"During the spring and summer of 1960, two oil wells, which are producing oil and gas in commercial quantities, were drilled on a portion of plaintiffs' land north of the highway right-of-way. There is a strong possibility that there is oil and gas underlying the 250-foot strip of land where I–94 is now constructed over plaintiffs' land.

"On June 10, 1960, the department of conservation leased the oil and gas rights under the 250-foot strip to defendant, Marathon Oil Company, following approval of said lease by the conservation commission on May 13, 1960, and the State administrative board on June 7, 1960.  *  *  *  The defendant, Marathon Oil Company, paid the department of conservation a good and sufficient consideration for said lease. The defendant, Marathon Oil Company (formerly The Ohio Oil Company) was aware of the fact that the highway commissioner had purchased the 250-foot strip by virtue of the warranty deed of October 22, 1958, referred to above, and that interstate highway I–94 was being constructed thereon.

"I–94 is a limited access highway upon which construction was completed in the summer of 1960 in the vicinity of plaintiffs' farm. Access to said highway may only be made at specified interchanges, none of which are located on plaintiffs' land.

"In some instances, along I–94 in Calhoun county, where ownership of land and the oil, gas, and mineral rights was in different ownership than the surface rights, the highway commissioner, in acquiring right-of-way for I–94, did not acquire the oil, gas,

and mineral rights. He only acquired the right of the surface owner, despite the fact that the ownership of the oil, gas, and mineral rights was of public record. In other instances, subsequent to the discovery of oil and gas in the Albion field, even in Sheridan township, where ownership was not divided, and the highway commissioner filed a determination of necessity, the following language was used therein:

" 'Reserving unto the grantor all oil and gas with and underlying the above described land. However, said grantor, her heirs, assigns and representatives are hereby forever barred from ingress to and egress from said above described land for removal of said oil and gas.'

"It is possible to drill on land outside of the right-of-way and recover oil and gas which may be underlying I-94 without disturbing the construction or travel upon I-94."

Plaintiffs' argument is that the statute[1] provides that the State highway commissioner must take property for trunk line highway purposes in the name of the State of Michigan and any excess property must be taken in his own name—that of John C. Mackie as State highway commissioner; that the whole of the 19.5 acres taken were for trunk line purposes, and the deed from plaintiffs to John C. Mackie as State highway commissioner is void since the commissioner is only authorized by statute to take excess lands not for highway purposes in his own name; that the highway commissioner is limited by the constitutional provision of eminent domain[2]

---

[1] CL 1948, § 213.172 (Stat Ann 1958 Rev § 8.172). Amended by PA 1962, No 22, not applicable here, to provide that fluid mineral and gas rights should be deemed excluded from such releases or conveyances unless specifically included therein, and that exercise of such rights should not interfere with the use of such property.

[2] Const 1908, art 13, § 1. For current provision, see Const 1963, art 10, § 2.—REPORTER.

and his statutory authority[3] to only take land for highway purposes; and that, therefore, he had no right to negotiate to take land for any purpose other than excess property or for property on which to build buildings, and to do otherwise is in excess of the authority granted to the State highway commissioner.

Plaintiffs in their bill offered to return the consideration paid by the commissioner if the deed is determined null and void. They argue that the highway department would then be free to pursue whatever course is authorized by statute[4] to acquire the land in question.

The trial judge in a written opinion correctly ruled on the questions involved in this case. We adopt that opinion as the opinion of this Court:

"Section 2 of the limited access highway act [CLS 1961, § 252.52 (Stat Ann 1958 Rev § 9.1094[2])] provides as follows:

" 'The State highway commissioner, boards of county road commissioners, and cities and villages, either acting alone or in cooperation with each other or with any Federal, State or local agency having authority to participate in the construction and maintenance of highways, are hereby authorized to establish, open, discontinue, vacate, close, alter, improve, maintain and provide for the public use of limited access highways.'    *    *    *

"Section 3 of this act [CLS 1961, § 252.53 (Stat Ann 1958 Rev § 9.1094[3])] is as follows:

" 'For the purposes of this act, the aforesaid agencies may acquire private property and property rights by purchase, gift, devise, or condemnation, and the provisions of any existing laws of this State shall apply. All property rights acquired under the provisions of this act shall be in *fee simple* or other appropriate estate.'    (Emphasis supplied.)

---

[3] CL 1948, § 225.2b (Stat Ann 1958 Rev § 9.204).—REPORTER.
[4] CL 1948, § 213.171 *et seq.* (Stat Ann 1958 Rev § 8.171 *et seq.*).

"The agencies described in section 2 (including the State highway commissioner) may acquire property by purchase or condemnation. Since the agencies, exclusive of the highway department, cannot possibly take title other than in the name of the agency, *e. g.*, board of county road commissioners, cities and villages, and the State highway commissioner is named in section 2, along with, and in the same context, as the other agencies, it follows that the legislature intended that property, acquired for trunk line limited access highway purposes, whether acquired by purchase or condemnation, be acquired in the name of the State highway commissioner.

"These statutes (sections 2 and 3 of the limited access highway act) do not make different provision for taking title of property, to be used for trunk line highway purposes, as distinguished from property which is or proves to be excess to the immediate needs of the highway department.

"Section 24 of PA 1925, No 352, as amended [CL 1948, § 213.194 (Stat Ann 1958 Rev § 8.195)], which authorizes the sale and conveyance of excess property by reference is incorporated into the limited access highway act and reads in part as follows:

" 'That in those cases where the title to excess lands, acquired by the State highway commissioner under *any law* of this State, has been taken in the name of the State of Michigan, it shall be lawful for the State highway commissioner, and he is hereby authorized and empowered to sell and convey said lands as if the title thereto had originally been taken in his name as hereinbefore provided.' (Emphasis supplied.)

"The authority vested in the State highway commissioner to dispose of excess land, whether title be taken in the name of the commissioner, or in the name of the State, is consistent with the proposition set forth in 49 Am Jur, States, Territories, and Dependencies, § 56, [p 269]:

" 'A State board empowered to take and hold the title to property for State purposes does not own

such property in any proprietary sense. It is State property, to all intents and purposes, the same as where the title thereto is formally vested in the State.'

"Since title to gas and oil rights, which prove to be excess, if taken in the name of the State, can be disposed of by the commissioner, as if taken *in his own name* (section 24 of the highway condemnation act), logic also permits disposition of 'excess' gas and oil rights *actually taken* in his own name, especially since acquisition in his own name was required by the limited access highway act.

"Pursuant to authorization set forth in section 3 of the limited access highway act, the highway commissioner acquired title in fee simple to the parcel in question. The act does not qualify the legal concept of 'fee simple' estate as embracing anything less than the entire bundle of rights including subsurface gas and oil rights. As stated in *Attorney General* v. *Pere Marquette R. Co.*, 263 Mich 431, 433 (94 ALR 520) fee simple title includes oil, gas, and minerals in the soil; and as an incident of ownership, the right to sell or lease or use the property in any lawful way. When the railroad purchases the fee, it may sell such portion as is not required for railroad purposes, including the gas and oil rights, as freely as could an individual.

"The State highway commissioner, who possesses the broad power to plan and construct trunk line highways, is not restricted, by Constitution or statute, as to the type of estate in land he may purchase.

"Article 13, § 1 of the 1908 Constitution provides that:

" 'Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law.'

"Even if the acquisition had been by condemnation, in which event the Constitution requires determination of necessity, nevertheless:

" 'Highway officers are authorized to condemn land in excess of the amount needed for right-of-way proper, if the public interest will be best served by such taking and the discretion so vested will not be interfered with by a court in the absence of a clear abuse of such discretion.' *New Products Corporation* v. *State Highway Commissioner,* 352 Mich 73.

"Any question relating to abuse of discretion could arise only in the exercise of the power of condemnation involving an involuntary surrender of title, the judicial review of which can only be accomplished in accordance with the special provisions delineated in the condemnation act itself.

"The language of the constitutional provision refers to property rights 'taken' by condemnation (involving a determination of necessity) and does not refer to such rights acquired by purchase.

"The land in question was acquired by purchase. The deed granted a fee simple estate to John C. Mackie, Michigan State highway commissioner, without any reservation of gas and oil rights.

"The fact that the commissioner chose to exclude gas and oil rights from other parcels taken in condemnation subsequent to the execution and delivery of the deed involved herein and subsequent to the discovery of oil and gas in the area is of no legal significance here and has no bearing upon the issue in this case.

"In view of the foregoing, we consider it unnecessary to discuss the subject of estoppel, laches, and purchase in good faith.

"A decree may be presented dismissing the bill of complaint, but without costs, since a public question is involved."

The highway commissioner properly took title to the parcel conveyed by plaintiffs by warranty deed with no reservation or estate reserved to plaintiffs. Such conveyance was absolute, without limitation, and this Court will not now entertain protests by plaintiffs to the contrary.

We further conclude that the lease given to Marathon Oil Company by the conservation department was a valid agreement and within the scope of the estate conveyed to the highway commissioner by the plaintiffs.

The judgment of the trial court is affirmed. No costs are allowed, a public question being involved.

DETHMERS, KELLY, BLACK, SOURIS, and O'HARA, JJ., concurred.

SMITH and ADAMS, JJ., did not sit.