BOFYSIL v DEPARTMENT OF STATE HIGHWAYS

(BOFYSIL v STATE)

1. STATES—LIABILITY FOR TORTS—SOVEREIGN IMMUNITY—GOVERNMENTAL AND PROPRIETARY FUNCTIONS.

The Legislature in re-establishing the doctrine of soverign immunity defined immunity as being a defense only when the tort involved was committed by the state when engaged in a governmental as opposed to a proprietary function (1945 PA 87).

2. STATES—SOVEREIGN IMMUNITY—GOVERNMENTAL AND PROPRIETARY FUNCTIONS—HIGHWAY CONSTRUCTION.

The construction of a highway is a governmental function of a state and a governmental agency may purchase land in excess of that needed for the highway right-of-way; however, a state agency may be engaged in a proprietary function at the same time it is engaged in a governmental function and when such a dual use of property is in evidence, the proprietary function must be separated from the governmental function and the governmental agency loses its immunity as to the proprietary use.

3. STATES—SOVEREIGN IMMUNITY—GOVERNMENTAL AND PROPRIETARY FUNCTIONS—DUAL USE OF PROPERTY.

The test to determine the particular capacity in which a state is acting when there exists both a governmental and a proprietary use of property is that if the object and purpose of the Legislature in conferral of the powers involved is for public purposes exclusively, then the state is deemed to be acting in a governmental capacity; however, if the grant of power is for purposes of private advantage and emolument, then even though the public derives some benefit therefrom the state stands on the same footing as any private individual without the shield of governmental immunity.

4. STATES—SOVEREIGN IMMUNITY—GOVERNMENTAL AND PROPRIETARY FUNCTIONS—HIGHWAY CONSTRUCTION.

It cannot be said that the purchase of property in addition to that

necessary for a highway right-of-way for the purpose of removing the fill for use in the construction of the highway, the removal of the fill in such a manner that a lake is created with the intention of making the unneeded particular parcel of property more salable when the highway is completed, and the subsequent sale of the property at a profit, is merely incidental to the governmental function of highway construction, but rather the activities are of such a nature as to place them into the realm of private advantage and emolument so as to be a proprietary function.

5. APPEAL    AND    ERROR—CONTRIBUTORY    NEGLIGENCE—PROXIMATE CAUSE—TRIER OF FACT.

The questions of negligence, contributory negligence and proximate cause are for the trier of fact and where a conclusion that defendants were guilty of negligence is clearly supported by the record and it could be reasonably inferred from the facts that plaintiff used due care and the evidence was overwhelming that defendants failed to provide sufficient warning of a potentially dangerous condition, the trial court's rulings on negligence, contributory negligence and proximate cause will not be set aside because they are not clearly erroneous.

Appeal from Court of Claims, Richard Robinson, J. Submitted Division 2 June 22, 1972, at Lansing. (Docket No. 12692.) Decided December 6, 1972. Leave to appeal denied, 389 Mich 768.

Complaint by Joseph E. Bofysil, Jr., by his next friend, Evelyn Fern Bofysil, and by Evelyn Fern Bofysil and Joseph E. Bofysil, Sr., for themselves, against the Department of State Highways for negligence and nuisance. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Anderson, Carr & Street,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Myron A. McMillan,* Assistants Attorney General, for defendant.

Before: HOLBROOK, P. J., and R. B. BURNS and
T. M. BURNS, JJ.

HOLBROOK, P. J. In the fall of 1961, the State
Highway Department began construction of a sec-
tion of Interstate Highway I-96. Prior to and pre-
paratory to construction, the department had ac-
quired several parcels of land including a 62-acre
parcel called the Bishop Parcel. Originally, the
department had planned to condemn or purchase
only 35 acres of this Bishop Parcel which were
needed for the highway right-of-way. Subse-
quently, however, the department decided to pur-
chase 22 additional acres for borrow purposes (i.e.,
for the removal of sand and gravel). Five acres
were used as a disposal area and for a road turna-
round. The sand and gravel extracted from the
Bishop Parcel were used exclusively for the con-
struction of I-96.

Because of the method used in order to remove
the borrow material, the excavation which re-
sulted filled with water. The highway department
conceded anticipating the formation of a lake in
the borrow excavation because of these methods.
In fact, to make the 22-acre portion of the Bishop
Parcel more saleable when construction of I-96
was complete, the state's contract for the removal
of borrow material called for the area around the
excavation to be tapered and for the bottom to be
contoured. Subsequent to the accident herein in-
volved, the parcel upon which the lake was located
was sold for a profit. The money received from this
sale was deposited in the statutory trunk-line
fund.

On May 5, 1962, the date of the accident herein
involved, the bottom of the lake was still of irregu-
lar contour. These irregularities were not visible
from the surface. The waterfill excavation had not

been fenced in nor had its dangerous character been posted. The highway department had been informed by the Ingham County Sheriff's Department that people were swimming in the excavation. The sheriff's department offered to put up warning signs. The highway department rejected the offer and promised to take protective measures. However, on the date of the accident, none had been taken.

On May 5, 1962, Joseph Bofysil Jr., then 15 years old, went swimming with friends in the newly formed lake. After swimming and diving without incident for approximately two hours, young Bofysil dove into the lake and struck his head on an unknown object. As a result, he suffered a transverse-traumatic lesion of the spinal cord which caused permanent paralysis below the fifth-cervical level.

Suit was brought in the court of claims against the highway department alleging negligence and nuisance. The highway department denied plaintiffs' allegations and pleaded the affirmative defenses of sovereign immunity and contributory negligence. The trial judge found that the defense of sovereign immunity was not applicable in that the highway department had been engaged in a proprietary function at the time of the accident, that the department had been negligent, and that young Bofysil had not been contributorily negligent. The judge found it unnecessary to decide the nuisance question. Judgments totaling $319,523.13 were entered in favor of plaintiffs. Defendants appeal raising four issues.

## I

Whether or not for the purposes of this action the doctrine of sovereign immunity in Michigan is

a viable defense for a state agency from tort liability when that state agency was involved in a proprietary function as opposed to a governmental function at the time that the tort was committed?[1]

In order to resolve this issue, it is necessary to turn to the history of the doctrine of sovereign immunity in Michigan.

Probably the first case in Michigan on the subject of sovereign immunity was the case of *Michigan State Bank v Hastings,* 1 Doug 225, 236 (Mich, 1844). In that case, it was stated:

"The principle is well settled that, while a state may sue, it cannot be sued in its own courts, unless, indeed, it consents to submit itself to their jurisdiction. * * * [A]n act of the Legislature, conferring jurisdiction upon the courts in the particular case, is the usual mode by which the state consents to submit its rights to the judgment of the judiciary."

Thereafter, several decisions expounded this doctrine that the state is immune from suit unless it consents by legislative act. *People ex rel Gratiot County Treasurer v Auditor General,* 38 Mich 746

---

[1] It is necessary at the outset to point out that all parties agree that the provisions of MCLA 691.1413; MSA 3.996 (113), which waive the defense of governmental immunity while the state is involved in a proprietary function is not applicable to the instant case. The accident occurred on May 5, 1962. Notice of claim was filed on October 5, 1962, and the plaintiffs' complaint was filed on May 5, 1965. Since the statute was effective on July 1, 1965, it is not applicable to the instant case. *Keenan v Midland County,* 377 Mich 57 (1966); Cooper, *Civil Procedure,* 13 Wayne L Rev 44, 71–72 (1966). Furthermore, the last sentence of MCLA 691.1413 cannot be construed to limit any action that the plaintiff may have had when the cause of action occurred. The provision states:

"No action shall be brought against the state for injury or property damage arising out of the operation of proprietary function, except for injury or loss suffered on or after July 1, 1965."

Under the facts of the case, the plaintiffs' cause of action occurred prior to the effective date of this statute and thereby became a vested property right which may not be destroyed or impaired by the legislation. *Devlin v Morse,* 254 Mich 113 (1931); *Cusick v Feldpausch,* 259 Mich 349 (1932).

(1878); *Sanilac County Bd of Supervisors v Auditor General,* 68 Mich 659 (1888); *Ottawa County Bd of Supervisors v Auditor General,* 69 Mich 1 (1888); *Auditor General v Tuscola County Treasurer,* 73 Mich 28 (1888); *Attorney General v Detroit, G H & M R Co,* 157 Mich 144 (1909); *McDowell v Warden of Ionia Reformatory,* 169 Mich 332 (1912); *Thompson v Auditor General,* 261 Mich 624 (1933); *Edward Thompson Co v Maynard,* 269 Mich 97 (1934); *Missouri Tie & Lumber Co v Sullivan,* 275 Mich 26 (1936). However, none of these cases involved the tort liability of the state nor did they render any definition of sovereign immunity in terms of functions nor indicate in any way what the nature of this immunity might be in tort cases.

Then, in *Ferris v Detroit Bd of Education,* 122 Mich 315 (1899), the Court held that where a board of education[2] erected a school building in such a manner so that ice and snow would inevitably slide from its roof onto the plaintiff's property or premises, it would be liable to the plaintiff for personal injuries sustained in falling upon the ice so precipitated, the trespass being the proximate cause of the injury. Immunity did not apply to "a direct injury to the person of the plaintiff while outside the limits of defendant's premises". Thus, for this type of tort, the state enjoyed no immunity at all.[3]

Thereafter, in *Whitehead v Detroit Bd of Educa-*

---

[2] A board of education or a school district is a state agency. *Whitehead v Detroit Bd of Education,* 139 Mich 490 (1905); *Daszkiewicz v Detroit Bd of Education,* 301 Mich 212 (1942); *Sayers v School Dist No 1, Fractional,* 366 Mich 217 (1962).

[3] *Ferris v Detroit Bd of Education,* 122 Mich 315 (1899) is the basis for the later decision of *Herro v Chippewa County Road Commissioners,* 368 Mich 263 (1962), wherein it was held that governmental immunity is not a defense which a county or the state may interpose against liability for an unlawful intrusion upon the lawful possession of a citizen. See also *Pound v Garden City School Dist,* 372 Mich 499 (1964).

*tion,* 139 Mich 490 (1905), the Court indicated that sovereign immunity from negligent tort liability was available only when a state agency was engaged in a state function at the time the tort was committed. Plaintiff, therein, was injured while he was employed by the defendant in the painting of one of its school buildings. He claimed that the injuries were caused by the negligence of the defendant's agents in providing unsafe appliances with which he was directed to work. The Court held that the defendant board of education was a state agency involved in a purely state function which entitled it to immunity from suit.

In *Daszkiewicz v Detroit Bd of Education,* 301 Mich 212 (1942), it was firmly established that a state agency was only entitled to immunity from tort liability when the tort occurred while the agency was engaged in a governmental as opposed to a proprietary function. The issue before the Court was whether the defendant board of education, in owning and operating Wayne University College of Medicine, to which tuition was charged and to which students were admitted only upon approval by a committee on admissions, was not performing a purely governmental function, but was engaged as a quasi-municipal corporation in a proprietary function and was therefore, liable for the negligence of its employees. The Court stated, p 220:

"The law has long been settled in this State that, in the absence of a statute creating liability, neither a school district nor the board of education representing the district can be held liable for injuries or damages caused by the negligence of its officers, agents, or employees while in the performance of their duties, because they, in furthering the purposes of education, *are in the exercise of a public or governmental function.*

*McDonell v Brozo,* 285 Mich 38 [1938]; *Robinson v Washtenaw Circuit Judge,* [228 Mich 225 (1924)]; *Daniels v Grand Rapids Bd of Education,* [191 Mich 339 (1916)]; *Whitehead v Detroit Bd of Education,* 139 Mich 490 [1905]. See, also, 66 ALR 1281; 24 ALR 1070; 21 ALR 1328; 14 ALR 1392; 9 ALR 911; 2 Shearman & Redfield on Negligence (6th ed), § 267; 14 CJS, p 1348; 28 Cyc, p 1309." (Emphasis supplied.)

After stating the test for determining whether a particular activity was a governmental or proprietary function the Court held, p 223:

"The collection of tuition from students and the admission of students only upon approval by a committee on admissions did not change defendant's operation of the medical school from a governmental function to that of a proprietary enterprise.

"We conclude that defendant, in owning and operating Wayne University College of Medicine, was a *State agency exercising a purely governmental function* and was not liable for the alleged negligence of its agents and employees." (Emphasis supplied.)

While *Whitehead* and *Daszkiewicz, supra,* both involved boards of education, it is clear that a board of education was and is classified as a state agency for tort liability purposes. *Sayers v School Dist No 1 Fractional,* 366 Mich 217 (1962). Therefore, the principles and the definitions of state immunity included therein are applicable to other state agencies including the defendants herein.

Furthermore, in *Manion v State Highway Commissioner,* 303 Mich 1, 19 (1942), the Court, after explaining the distinction between sovereign immunity from suit and sovereign immunity from liability pertaining to 1939 PA 135, expressly declared that sovereign immunity only exists when the sovereign is engaged in a *governmental function.*

"There is a distinction between sovereign immunity from suit and sovereign immunity from liability. *The latter exists when the sovereign is engaged in a governmental function.* The former may be waived without a waiver of the latter. Section 24 of the court of claims act (Act No. 135, PA 1939 [Comp Laws Supp 1940, § 13862-1 *et seq.,* Stat Ann 1940 Cum Supp § 27.3548 (1–24)]) reads:

" 'This act shall in no manner be construed as enlarging the present liabilities of the State and any of its departments, commissions, boards, institutions, arms or agencies.'

"I construe this to mean that the *State's immunity from liability while engaged in a governmental function* is preserved because the waiver of this defense would enlarge the 'present liabilities of the State.' " (Emphasis supplied.)

Again in *Mead v Michigan Public Service Commission,* 303 Mich 168, 171 (1942), it was specifically declared that the doctrine of sovereign immunity in Michigan applies while the governmental agency is engaged in a *governmental function.*

"The trial judge in the court of claims first granted defendants' motion to dismiss on the ground that the Michigan public service commission was a governmental agency, and that the *defense of governmental function,* raised by the motion to dismiss, was available to it and relieved it of liability at the common law. This defense continues to exist in the absence of any statute to the contrary." (Emphasis supplied.)

Thus, it is clear that as of the time of the above-cited cases, the doctrine of sovereign immunity from tort liability was defined in terms of governmental function as opposed to proprietary function and only applied when the state agency involved was engaged in a governmental function.

In 1943, the Legislature enacted 1943 PA 237[4]

---

[4] 1943 PA 237 amended 1939 PA 135, the court of claims act.

which waived sovereign immunity from liability on the part of the state in all actions. However, two years later, the Legislature repealed the 1943 amendment which had waived immunity by enacting 1945 PA 87. 1945 PA 87 reads as follows:

"AN ACT *to abolish the defense of governmental function in certain actions* brought against the state of Michigan; and to repeal section 24 of Act No. 135 of the Public Acts of 1939, as amended by Act No. 237 of the Public Acts of 1943.

"*The People of the State of Michigan enact:*

"Section 1. In all actions brought in the court of claims against the state of Michigan to recover damages resulting from the negligent operation by an officer, agent or employee of the state of Michigan of a motor vehicle of which the state of Michigan is owner as defined by Act No. 302 of the Public Acts of 1915, as amended, the fact that the state of Michigan was in the ownership or operation of such motor vehicle, engaged in a governmental function shall not be a defense to such action: Provided, however, That this act shall not be construed to impose upon the state of Michigan a liability other or greater than the liability imposed upon other owners of motor vehicles by the provisions of Act No. 302 of the Public Acts of 1915, as amended.

"Section 2. Section 24 of Act No. 135 of the Public Acts of 1939, as amended by Act No. 237 of the Public Acts of 1943, is hereby repealed.

"Approved April 11, 1945." (Emphasis supplied.)

Section 2 specifically repealed 1943 PA 237. This has been construed as determining the legislative intent to re-establish the doctrine of sovereign immunity by statute. *Sayers v School Dist No 1 Fractional, supra; McDowell v State Highway Commissioner,* 365 Mich 268 (1961). Thus, in order to determine whether the Legislature intended to define sovereign immunity, as in the prior common law, in terms of governmental function or more

absolutely, *i.e.,* as including proprietary functions, it is necessary to examine 1945 PA 87.[5]

Section 2, being the repealing section, reveals nothing from which a definition of sovereign immunity could be ascertained. However, from the wording and clear implication of § 1 of the act, it is readily apparent that the Legislature intended to define the doctrine of sovereign immunity in terms of governmental function only rather than both governmental and proprietary functions. The section speaks only in terms of governmental function. There is no mention of proprietary function. Furthermore, when the statute is analyzed in reference to its purpose, it becomes readily apparent that the Legislature intended to define sovereign immunity in terms of governmental function only. The purpose of the act is to abolish the defense of governmental function in certain actions brought against the state. The only reasonable conclusion that can be drawn therefrom is that the Legislature, by abolishing the defense of governmental function in certain actions, abolished sovereign immunity as a defense in those actions, *i.e.,* governmental function being thereby synonymous with sovereign immunity. The only other possible interpretation that could be given would be that the Legislature, in abolishing the defense of governmental function, did not affect in any way any defense of proprietary function, assuming such a defense existed. The result would be that the state would be immune from suit when it was involved in a proprietary function, *i.e.,* private capacity, but would not be immune from suit when it was involved in a governmental function, *i.e.,* a governmental capacity. Such an interpretation

---

[5] 1961 PA 236 (MCLA 600.6475; MSA 27A.6475) has substantially the same wording as 1945 PA 87 except for the fact that it adds aircraft to motor vehicles.

would be completely illogical and absurd. Unless necessary, statutes are not to be so construed as to result in absurdity. *General Motors Corp v Unemployment Compensation Commission,* 321 Mich 604 (1948). Here there appears to be no such necessity. Therefore, we hold that the Legislature, in re-establishing the doctrine of sovereign immunity by 1945 PA 87, defined immunity as only being a defense when the tort involved was committed by the state when engaged in a governmental as opposed to a proprietary function. We note that this conclusion is in accord with the later cases of *Richards v Birmingham School Dist,* 348 Mich 490 (1957); *Sayers v School Dist No 1 Fractional, supra;* and *Cody v Southfield-Lathrup School Dist,* 25 Mich App 33 (1970);[6] *Williams v Primary School Dist No 3 Green Twp,* 3 Mich App 468 (1966).

## II

Whether or not the state, at the time of the accident involved, was involved in a proprietary function?

Defendants contend that the state land upon which the plaintiff was injured was being used solely for the purpose of building the highway involved and that since the building of a highway is a governmental function, the state's use of the borrow pit area for fill and the creation of the lake was part of the governmental function of building the highway. Furthermore, defendant states that all funds used for the highway were taken out of the state trunk-line fund, that the money received from the sale of the additional 22-acre parcel went

---

[6] Because these cases don't refer to any legislative enactment, they raise some doubt as to whether sovereign immunity is a matter of the legislative enactment or of the common law.

back into the fund, and that its method of obtaining the fill was designed merely to save the state money and not to reap a profit.

Plaintiff contends that the state was engaged in a proprietary function via the acquiring, owning, possessing, maintaining, and developing the land to make it more saleable, and the eventual selling at a profit of the 22-acre parcel in question. See plaintiff's exhibit 8 at the end of opinion.

It is clear that the construction of a highway is a governmental function. *Longstreet v Mecosta County,* 228 Mich 542 (1924). Furthermore a governmental agency may purchase land in excess to that needed for a right-of-way. *Winter v State Highway Commissioner,* 376 Mich 11 (1965). However, it is equally clear that a state agency may be engaged in a proprietary function at the same time it is engaged in a governmental function. When such a dual use of property is in evidence, the proprietary function must be separated from the governmental function and the governmental agency loses its immunity as to the proprietary use. *Dohm v Acme Twp,* 354 Mich 447 (1958); *Carlisi v Marysville,* 373 Mich 198 (1964); *Munson v Menominee County,* 371 Mich 505 (1963). The test for determining whether such a dual use of the property was involved at the time that the injury occurred to the plaintiff is set forth in *Carlisi v Marysville, supra,* p 205:

"This Court has considered the question of determining the particular capacity in which a defendant city was acting where there was involved a dual use of property. *Matthews v Detroit,* 291 Mich 161 [1939]; *Lisiecki v Detroit-Wayne Joint Bldg Authority,* 364 Mich 565 [1961]; *Munson v County of Menominee,* 371 Mich 505 [1963]. The rule from these cases is that if the object and purpose of the legislature in conferral of the powers involved is for public purposes exclusively, then

the municipality is deemed to be acting in a governmental capacity. However, if the grant of power is for purposes of private advantage and emolument, then even though the public derives some benefit therefrom the municipality stands on the same footing as any private individual without the shield of governmental immunity."

When this rule is applied to the facts in the instant case, it is readily apparent that at the time of the injury the state was involved in a proprietary function. The defendants first were only going to purchase enough property for a right-of-way. However, they decided to purchase an additional parcel in order to remove the fill for use in the construction of the highway. Testimony revealed that there were different methods by which the fill could have been removed, *i.e.,* by creating a lake or by removing the fill without creating a lake. The state specifically chose a method whereby a lake would be created. Part of the contract with the private contractor involved indicated that he was to contour the edges and bottom of the newly created lake. All of these acts were designed to make the unneeded land (lake) involved more saleable when the highway was completed. Subsequent to the accident, the parcel was sold at a profit. It cannot be said that these actions were merely incident to the construction of the highway. Rather, they were the same as any other business improving land to make a profit. Thus, the activities were of such a nature as to place them into the realm of private advantage and emolument so as to be a proprietary function. *Carlisi, supra.* Therefore, we hold that the state, at the time of the injury, was engaged in a proprietary function and was therefore on the same footing as any private individual, without the shield of governmental immunity.

III

Whether or not the trial court erred in finding the defendants negligent?

This Court will not substitute its judgment on factual questions in a nonjury case for that of the trial court unless it is clearly indicated that a opposite result should be reached. *Tait v Ross,* 37 Mich App 205 (1971). Findings of fact in a nonjury action will not be reversed unless they are clearly erroneous. *Thompson v Essex Wire Co,* 27 Mich App 516 (1970).

The trial court found the following:

"Defendants, acting through their contractor, had a common law duty to conduct the earth removal from the borrow area with due regard for the safety of others.

"Defendants argue that young Bofysil, as a trespasser, was not within that class of persons to whom defendants owed such a duty. The proofs, however, do not lead to this conclusion. Although nothing indicates that defendants generated such thinking, it was generally understood in the neighborhood, as well as being the understanding of young Bofysil and his parents, that the area was being developed with a view to providing public recreation for the area. This idea was fostered by defendants, albeit unintentionally, by their knowledge of the fact that the public was, in the Spring of 1962, using the area for swimming and picnicking, and by their failure to do anything to warn them that it was not a public area. In sum the defendants tolerated the public in this area.

"The defendants breached their duty of due care by failing to warn the public, including young Bofysil, of the inherent dangers of the pit, while having knowledge of such dangers resulting from the unfinished and roughly carved nature of the bottom of the pit—a fact not capable of detection by one looking at the surface of the water in the pit. This breach is made more appar-

ent by defendants' failure to act after being warned by Ingham County authorities of the hazardous situation."

The trial court's conclusion that defendants were guilty of negligence is clearly supported by the record and therefore not clearly erroneous.

## IV

Whether or not the plaintiff was contributorily negligent, which negligence was a proximate cause of the accident?

The question of contributory negligence is for the determiner of the facts, and the trial court's finding will not be set aside by this Court unless it is clearly erroneous. *Thompson v Essex Wire Co, supra.* Proximate cause is a question for the trier of fact. *Selmo v Baratono,* 28 Mich App 217 (1970).

On the questions of contributory negligence and proximate cause, the trial court found as follows:

"Defendants'. breach of this duty was the proximate cause of young Bofysil's injury. Although plaintiffs' medical expert, Dr. Meade, expressed an opinion from which one could conclude that a faulty dive by the boy caused his injury, it is a fair inference from the proofs concerning the nature of his dive into the water, and from the proofs concerning the irregular nature of the bottom of the pit, that he struck his head against either the side of the trench or against an irregular outcropping in the bottom of the pit.

"Defendants contend that the boy was guilty of contributory negligence in failing to ascertain the presence of these irregularities in the pit, but weighing against this is evidence that on his first trip to the pit the boy, by his testimony and that of his friends, had explored the area around the dune before swimming; that this was the third time the boy had swam in this area without noticing anything untoward; that others had been swimming in this area for several weeks without detecting the danger."

Upon review of the record, it is clear that the trial court had sufficient basis to determine that plaintiff was not guilty of contributory negligence and that defendants breach of duty was the proximate cause of plaintiff's injury. It could be reasonably inferred from the facts that plaintiff used due care in swimming in the lake. In addition, the evidence is overwhelming that defendants failed to provide sufficient warning that the lake could be dangerous for swimming. Therefore, the trial court's rulings on contributory negligence and proximate cause were not erroneous.

Affirmed. No costs, a public question being involved.

All concurred.

Plaintiff's Exhibit 8

Plaintiff's Exhibit 8—Cont'd