STREMLER v DEPARTMENT OF STATE HIGHWAYS

1. Highways—Streets—Public Places—Dangerous Conditions—Condition Making Use Inconvenient—Negligence.

Conditions in streets and public places which render the use thereof dangerous or inconvenient present issues referable to the law of negligence.

2. Highways—Defective Design—Negligence—Obligation to Correct Defect—Continuing Obligation.

Defective design in a public right of way may lead to a continuing obligation to correct such defect and, should a governmental entity fail to do so when on notice that such is necessary, liability may be based upon its negligence in failing to correct the defect.

3. Nuisance—Negligence.

A nuisance may result from negligence (MCLA 691.1402).

4. Highways—Nuisance—Negligence—Question of Fact—State Highway Department.

The question of whether a decedent's injury and damage was proximately caused by one or more of the acts of negligence of the State Highway Department which may be the basis of nuisance is one of fact where nuisance has been properly alleged, noticed, and filed (MCLA 691.1401 *et seq.).

5. Nuisance—Words and Phrases.

A nuisance involves not only a defect, but threatening or impending danger to the public, or, if a private nuisance, to the property rights or health of persons sustaining peculiar rela-

References for Points in Headnotes

[1] 39 Am Jur 2d, Highways, Streets, and Bridges § 337 *et seq.*
[2] 39 Am Jur 2d, Highways, Streets, and Bridges § 411 *et seq.*
[3, 4] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 368, 426.
   57 Am Jur 2d, Negligence § 2.
   58 Am Jur 2d, Nuisances § 3.
[5] 57 Am Jur 2d, Negligence § 2.
   58 Am Jur 2d, Nuisances § 3.
[6–9] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 104–106, 341, 347.

tions to the property, and the doctrine of nuisance should be confined to such cases.

6. TORTS—STATE AGENCY—GOVERNMENTAL FUNCTIONS—PROPRIETARY FUNCTIONS—IMMUNITY.

A state agency is immune from liability for a tort which occurred while the agency was engaged in a governmental, as opposed to a proprietary, function.

7. HIGHWAYS—HIGHWAY CONSTRUCTION AND MAINTENANCE—GOVERNMENTAL FUNCTION—IMMUNITY—STATUTES.

Construction and maintenance of public highways is the discharge of a governmental function for the improper discharge of which no liability exists except as created by statute.

8. STATUTES—GOVERNMENTAL LIABILITY—STRICT CONSTRUCTION.

A statute which attempts, in derogation of common law, to create liability for a governmental agency, must be strictly construed.

9. LIMITATION OF ACTIONS—TORTS—NEGLIGENCE—HIGHWAYS—DAMAGES.

Actions based upon bodily injury or property damage resulting from the failure of a governmental agency to keep a highway in reasonable repair and reasonably safe and fit for travel must be brought within two years (MCLA 691.1411[2]).

Appeal from the Court of Claims, Kenneth G. Prettie, J. Submitted Division 3 December 3, 1974, at Lansing. (Docket No. 19861.) Decided February 13, 1975. Leave to appeal applied for.

Complaint in the Court of Claims by Jean M. Stremler, as administratrix of the estate of Wallace Stremler, against the Department of State Highways, for damages resulting from alleged faulty design, improper construction and improper maintenance of a highway. Judgment for defendant. Plaintiff appeals. Affirmed.

*Cholette, Perkins & Buchanan* (by *Kenneth L. Block),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, and *Louis J. Caruso* and *Myron A. McMillan,* Assistants Attorney General, for defendant.

Before: D. E. Holbrook, P. J., and R. B. Burns and Van Valkenburg,* JJ.

D. E. Holbrook, P. J. Wallace Stremler lost control of the truck he was driving while proceeding in the northbound lane of US Highway 131 in Grand Rapids and was thrown from the truck, which injury caused his death. Plaintiff, as administratrix of the estate, brought suit against the defendant, Michigan Department of State Highways. A complaint was filed in the Court of Claims on November 13, 1973, which in pertinent part stated:

" * * * That on November 20, 1970 at approximately 4 a.m. in the northbound lane of U.S. 131, commonly known as the "S" curve in the City of Grand Rapids approximately 500 to 600 feet south of the Market Street exit when plaintiff's deceased was proceeding north that said driver lost control of said vehicle without fault on his part due to conditions then and there existing in conjunction with the improper design and possible improper speed posted at said time that said deceased was killed thereby when thrown from said truck.
" * * * That said design, construction and maintenance is a nuisance. That said Highway Department had control over the design, construction and maintenance of said highway. That authorizing, maintaining, construction and design of said "S" curve as an expressway or freeway was improper. Further, the Michigan Department of State Highways has had notice of the inordinate number of accidents caused by the "S" curve and has attempted to alleviate some of the conditions

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

but has failed to change or alleviate the basic problem of the "S" curve itself, thus has maintained a nuisance. That the Michigan Department of State Highways is therefore liable because of the design, construction and maintenance of said nuisance."

Defendant moved for accelerated judgment, in accordance with GCR 1963, 116.1(5), based upon MCLA 691.1411(2); MSA 3.996(111)(2). Defendant also moved for summary judgment, in accordance with GCR 1963, 117.2(1), asserting that plaintiff had not stated a claim upon which relief could be granted, as the highway department was immune from tort liability as one of the principal departments of the State of Michigan. By opinion, the Court of Claims granted defendant's motion for summary judgment. An order for accelerated judgment was entered and the complaint was dismissed. Plaintiff has here appealed and set out four issues, two[1] of which are admittedly proffered in order to preserve such issues for further appeal and will not be discussed here.

I

Plaintiff claims that the action herein is founded on nuisance and, as such, is outside the scope of MCLA 691.1402; MSA 3.996(102).[2] This assertion is

[1] Plaintiff asserts that (1) MCLA 691.1401 *et seq;* MSA 3.996(101) *et seq* (the governmental immunity act) is unconstitutional as a denial of due process of law and equal protection, and (2) MCLA 691.1411(2); MSA 3.996(111)(2) [the two-year statute of limitation for actions founded on MCLA 691.1402; MSA 3.996(102)] is an arbitrary and unreasonable classification.

[2] "Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. The liability, procedure and remedy as to county roads under

premised upon MCLA 691.1407; MSA 3.996(107), which provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein said government agency is engaged in the exercise and discharge of a governmental function. *Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is hereby affirmed."* (1964 PA 170, § 7, Eff. July 1, 1965.) (Emphasis supplied.)

*Williams v Primary School District #3, Green Twp,* 3 Mich App 468, 475–476; 142 NW2d 894, 897 (1966), was a wrongful death action brought by the parents of a 6-year-old girl who died while using playground equipment situated on the defendant's premises. This writer wrote:

"Plaintiffs cite the case of *Royston v City of Charlotte,* 278 Mich 255; 270 NW 288 (1936), wherein Mr. Justice WIEST stated on p 260; NW 290:
" 'Acts in the discharge of governmental functions which create a nuisance per se do not come within the immunity otherwise accorded. Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care.'
"To better understand whether the piece of play-

the jurisdiction of a county road commission shall be as provided in 1909 PA 283, as amended, being 1948 CL 224.21. The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel. No action shall be brought against the state under this section except for injury or loss suffered on or after July 1, 1965. Any judgment against the state based on a claim arising under this section from acts or omissions of the state highway department shall be payable only from restricted funds appropriated to the state highway department or funds provided by its insurer." MCLA 691.1402; MSA 3.996(102).

ground equipment in our case comes within the desig-
nation of a nuisance we turn to Prosser on Torts (3d
ed), Nuisance, § 87, pp 592–594 for enlightenment and
find:

" 'There is perhaps no more impenetrable jungle in
the entire law than that which surrounds the word
"nuisance". It has meant all things to all men, and has
been applied indiscriminately to everything from an
alarming advertisement to a cockroach baked in a pie.
There is general agreement that it is incapable of any
exact or comprehensive definition. Few terms have
afforded so excellent an illustration of the familiar
tendency of the courts to seize upon a catchword as a
substitute for any analysis of a problem; the defendant's
interference with the plaintiff's interests is character-
ized as a "nuisance", and there is nothing more to be
said. With this reluctance of the opinions to assign any
particular meaning to the word, or to get to the bottom
of it, there has been a rather astonishing lack of any
full consideration of "nuisance" on the part of legal
writers. * * * *A private nuisance is a civil wrong, based
on a disturbance of rights in land.* The remedy for it
lies in the hands of the individual whose rights have
been disturbed. *A public or common nuisance, on the
other hand, is a species of catch-all criminal offense,
consisting of an interference with the rights of the
community at large, which may include anything from
the obstruction of a highway to a public gaming-house
or indecent exposure.* As in the case of other crimes,
the normal remedy is in the hands of the State. The
two have almost nothing in common, except that each
causes inconvenience to someone, and it would have
been fortunate if they had been called from the begin-
ning by different names. Add to this the fact that a
public nuisance may also be a private one, when it
interferes with the enjoyment of land, and that even
apart from this there are circumstances in which a
private individual may have a tort action for the public
offense itself, and it is not difficult to explain the
existing confusion.' (Emphasis supplied.)

"Applying the definition of nuisance to the facts of
our case we are constrained to conclude that the play-
ground equipment in question does not constitute a

private nuisance for it was not a civil wrong based on a disturbance of rights in land, or a public nuisance, for it did not interfere with the rights of the community at large, nor was the maintenance of such equipment a criminal offense. At most under plaintiffs' allegations, this piece of equipment would be dangerous if used by children of tender age without proper supervision. Plaintiffs did not plead facts to show that the 'Giant Stride' equipment was a nuisance per se. If it became dangerous, it did so by reason of the manner in which or by whom it was used."[3]

---

[3] This Court in *Maki v East Tawas,* 18 Mich App 109, 115–116; 170 NW2d 530, 532 (1969), *aff'd* 385 Mich 151; 188 NW2d 593 (1971), quoted from *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521, 527–528 (1952), which quoted from *Beckwith v Town of Stratford,* 129 Conn 506; 29 A2d 775 (1942), thusly:

" ' "Apart from nuisances which have their origin in accident, nuisances resulting in personal injury fall into three general classes. Beven, Negligence (4th ed), p 426, note. One class includes nuisances which result from conduct which is in itself a violation of law, and as to them it has been held on high authority that contributory negligence is not a defense, *Delaney v Philhern Realty Corp,* 280 NY 461, 465; 21 NE2d 507 (1939); but with such nuisances we have no concern in this case. A second includes nuisances which are intentional, using that word as meaning not that a wrong or the existence of a nuisance was intended but that the creator of them intended to bring about the conditions which are in fact found to be a nuisance. The other class includes nuisances which have their origin in negligence, which in its essence is an absence of care. Nuisances falling in the second class are those which we characterize as absolute and against which contributory negligence is not a defense. To hold that contributory negligence should not be a defense as regards them and should be as to the last class of nuisances rests upon the essential difference in the nature of the wrong committed. Negligence consists in a failure to exercise due care, and to a nuisance grounded on negligence, contributory negligence is for that reason an appropriate defense. Winfield, Torts, p 501. Where, however, the essence of the wrong is conduct which is intentional, in the sense in which we have used that word, that conduct goes beyond a mere lack of proper care, and there is not the same balance of obligation between the duty of one person to guard another from an injury from such a lack and the duty of the other not to fail to exercise a like care in his own protection. See Bohlen, Studies in the Law of Torts, p 527. The fact that contributory negligence is not a defense as against reckless misconduct presents a somewhat analogous situation." ' " (Citations omitted.)

Also see 18 McQuillin, Municipal Corporations (3d ed rev), § 53.49, pp 258, 259, where it is said:

" 'The wrongfulness must have been in the acts themselves, rather than in the failure to use the requisite degree of care in doing them,

Under *Williams, supra,* we find in the instant case there is no disturbance of rights in land, and no assertion that it is nuisance per se, *i.e.,* as a matter of law. Plaintiff would have had to plead a great deal more in order to substantiate a claim of public nuisance in the context of this case.[4]

"It is * * * the settled law of this state that the construction and maintenance of public highways is the exercise of a governmental function for the public discharge of which no liability exists except as created by statute." 12 Callaghan's Michigan Civil Jurisprudence, Highways & Streets, § 400, p 414.

In *Blackwelder v Concord,* 205 NC 792, 795, 796; 172 SE 392, 393; 90 ALR 1495, 1497, 1498 (1934), the Court said:

"There are many cases in the books permitting the recovery of damages for negligent construction of streets and for lack of ordinary care in the maintenance thereof, but such cases do not control the decision of the case at bar. The injury in this case results from the plan adopted or the exercise of the judgment of the governing authorities, and not from negligence in the execution of the plan in the construction and maintenance of the streets. Therefore the motion for nonsuit should have been allowed. *Rollins v Winston-Salem,* 176 NC 411; 97 SE 211 [1918]."

Conditions in streets and public places which

and therein lies the distinction, under the facts of this case, between "nuisance" and "negligence," the one is a violation of an absolute duty; the other a failure to use the degree of care required in the particular circumstances—a violation of a relative duty. A nuisance may be created or maintained with highest degree of care, and the negligence of a defendant, unless in exceptional cases, is not material.' In brief, a municipal corporation is liable for maintaining or contributing to the maintenance of a nuisance to the same extent as is an individual, and it may be jointly liable with others for the maintenance thereof." (Footnotes omitted.)

[4] If plaintiff wished to assert an intentional nuisance as outlined in *Maki, supra,* fn 3, such should have been pled.

render the use thereof dangerous or inconvenient present issues referable to the law of negligence. 18 McQuillin, Municipal Corporations (3d ed rev), § 53.47, p 248. When the defect in a public right of way is a natural consequence of negligence in original construction, there need not be notice, actual or constructive, of the duty to repair where the governmental entity was charged with notice from the beginning. 19 McQuillin, *supra,* § 54.105a, pp 293, 294. Defective design may lead to a continuing obligation to correct such defect and, should a governmental entity fail to do so, when on notice that such is necessary, liability may be based upon its negligence in failing to correct the defect.[5] *Hargis v City of Dearborn Heights,* 34 Mich App 594, 601; 192 NW2d 44, 48 (1971), and *Ebel v Saginaw County Board of Road Commissioners,* 386 Mich 598, 607; 194 NW2d 365, 369 (1972), where the Court wrote:

"Since a nuisance may be 'public' or 'private', 'civil'

[5] In Annotation: *Liability of municipality for injury to person or property due to improper plan for or defects in original construction of street or highway,* 90 ALR 1502, p 1503, it is written:

"The courts, however, have enunciated the general rule that a municipality is not liable for injuries resulting from its adoption of an improper plan for a street or highway, but by numerous limitations, qualifications, and provisos have left little scope for its actual operation."

*Cf. Ferris v Board of Education of Detroit,* 122 Mich 315, 318; 81 NW 98, 99 (1899), where the Court said:

"The trial court was of the opinion that the defendant, being a municipal corporation, could not be held liable for negligent injuries under the common law, and, there being no liability created by statute, the plaintiff could not recover. It is conceded by counsel for plaintiff that *municipal corporations are not generally held liable, under the common law, for negligent injuries to individuals arising from defective plans of construction of public works or failure to keep the same in repair;* but it is contended that, where the injury is the result of the direct act or trespass of the municipality, it is liable, no matter whether acting in a public or private capacity. We are satisfied that counsel for plaintiff are right in this contention." (Emphasis supplied.)

*Cf. Hobbs v State Highway Dept,* 58 Mich App 189; 227 NW2d 286 (1975).

or 'criminal', compliance with the orders of a regulatory commission such as the Public Service Commission, are usually held to preclude a charge of 'public' or 'criminal' nuisance. It cannot be said however that under all circumstances compliance with an order of the commission absolves a railroad from liability for *maintaining* a nuisance in fact. See 58 Am Jur 2d, Nuisances, §§ 229, 230, pp 833–835.

"No state agency is free to *maintain* a nuisance, and hence it cannot permit or require another person to do so."[6] (Emphasis supplied.)

Nuisance may be a result of negligence under MCLA 691.1402; MSA 3.996(102). *Cf. Weckler v Berrien County Road Commission,* 55 Mich App 7; 222 NW2d 9 (1974), *Detroit Bank & Trust Co v Dept of State Highways,* 55 Mich App 131; 222 NW2d 59 (1974), *lv den,* 392 Mich 820 (1974). When properly alleged, noticed, filed under the statute and within the statute of limitations, the question of whether decedent's injury and damage was proximately caused by one or more of the acts of negligence (which may be the basis of nuisance) is one of fact.

In *Kilts v Board of Supervisors of Kent County,* 162 Mich 646, 651; 127 NW 821, 822 (1910), Justice HOOKER wrote:

"We are of the opinion that a nuisance involves, not only a defect, but threatening or impending danger to the public, or, if a private nuisance, to the property rights or health of persons sustaining peculiar relations to the same, and that the doctrine should be confined to

[6] Likewise distinguishable is *In re Woods Estate,* 49 Mich App 412; 212 NW2d 240 (1973), where plaintiffs' decedent had been decapitated by a steel beam from a barricade which had been erected because of construction. Also distinguishable is *Harry v Muskegon,* 41 Mich App 642; 200 NW2d 460 (1972), which was based upon irrepair and traffic obstruction which rendered "the street unsafe or unfit for travel". Generally *cf.* 39 Am Jur 2d, Highways, Streets and Bridges, §§ 429, 431, pp 826, 827, 828.

such cases. While adjudicated cases have been so variable that courts generally regard a technical and comprehensive definition difficult if not impracticable, the trend of opinion seems to be that the circumstances must be examined with a view to ascertaining *whether the alleged condition is one so serious as to interfere with the comfort of life and enjoyment of property, or so threatening as to constitute an impending danger to persons in the enjoyment of their legitimate rights.*"[7] (Emphasis in original.)

*Cf. Fraley v City of Flint,* 54 Mich App 570, 574; 221 NW2d 394, 397 (1974), *Hargis, supra,* and *Mullins v Wayne County,* 16 Mich App 365; 168 NW2d 246 (1969).

Much of plaintiff's argument is based upon *Buckeye Union Fire Ins Co v State of Michigan,* 383 Mich 630, 644; 178 NW2d 476, 483 (1970). Liability in that case was founded upon nuisance *and* a taking of private property without just compensation. The Court said that the State had

---

[7] Likewise, in 19 McQuillin, Municipal Corporations (3d ed rev), § 54.61a, pp 146, 147, it is said:

"While it is generally held that there is no municipal liability for injuries resulting from the adoption of defective plans for the construction of public ways, this means no more than that a municipality is not liable for negligence or errors of judgment in the adoption of a plan for the construction of a public work. Accordingly, when a defect created by carrying out the adopted plan, and inherent in the plan itself, causes a condition so palpably and manifestly unsafe that no prudent man would approve its continued existence, the municipality may be held liable for failure to correct the defect. Furthermore, the right to devise plans has never been held to excuse the city from negligence of construction or maintenance of such plans. As soon as a municipality begins to carry out a plan of making public improvements, it acts ministerially and is bound to see that the work is done in a safe and skillful manner." (Footnotes omitted.)

In 18 McQuillin, *supra,* § 53.49, p 258, it is said: "But to create liability, however, the structure must have been inherently and imminently dangerous and a menace to the safety of the deceased, and the municipality must have created or participated in the creation of the dangerous and menacing condition."

*Cf.* Prosser, Torts (3d ed), § 77, pp 528, 529.

permitted a nuisance to continue so as to interfere with and damage the property of plaintiff. The Court said: "There is no sovereign immunity applicable to a situation of nuisance *as we have in this case"*. (Emphasis supplied.) Of *Buckeye,* this Court said in *Kelley v East Lansing,* 50 Mich App 511, 513; 213 NW2d 557, 558 (1973): "The *Buckeye* case recognizes an exception from the sovereign immunity statute for a nuisance which contravenes the constitutional prohibition against the taking of property without just compensation". *Cf.* Cooperrider, *1971 Annual Survey of Michigan Law—Torts,* 18 Wayne L Rev 503, 521 (1972). We think that a fair reading of *Buckeye,* and proper interpretation thereof, discloses that the case may be limited to situations where a public nuisance has resulted in the taking of private property without just compensation.[8]

As plaintiff has not alleged facts sufficient to fall within any of the foregoing situations where nuisance might be said to be the foundation of a cause of action outside of the statute, her cause of action in order to go forward must be under the statute. See *Campbell v Detroit,* 51 Mich App 34, 37; 214 NW2d 337, 338 (1973).

---

[8] This is consistent with the late Dean Prosser's statement that:

"One anomaly is the generally accepted view that the municipality is liable if it can be found to have created or maintained a nuisance, even though it be in the course of an otherwise 'governmental' function. The origin of this seems to be found in the idea that the creation of a private nuisance amounted to a taking of land without compensation, or that the city, as a landowner, was necessarily a proprietor, and subject to the responsibilities of one toward other landowners. If this was the explanation, it was soon lost to sight when the principle was extended to public nuisances where neither consideration is involved. Since liability for nuisance rests in many cases upon nothing more than negligence, for which in theory the municipality is not liable, the result has been a rather hopeless attempt to distinguish between the two, which has added confusion to the law of both nuisance and municipal corporations." Prosser, *supra,* fn 7, § 125, pp 1009, 1010.

## II

It is firmly established that a state agency is entitled to immunity from tort liability when a tort occurred while the agency was engaged in a governmental as opposed to a proprietary function. See *Bofysil v Dept of State Highways,* 44 Mich App 118, 124; 205 NW2d 222, 226 (1972), citing *Daszkiewicz v Detroit Board of Education,* 301 Mich 212; 3 NW2d 71 (1942). Torts caused by negligence give rise to immunity which is absolute except to the extent that it is abrogated by legislation. See *McNees v Scholley,* 46 Mich App 702, 707; 208 NW2d 643, 646 (1973). See generally 2 Harper & James, Law of Torts, § 29.4, pp 1614, 1615.[9] In *Longstreet v County of Mecosta,* 228 Mich 542, 551; 200 NW 248, 251 (1924), the Court said:

"That the construction and maintenance of public highways is the discharge of a governmental function, for the improper discharge of which no liability exists except as created by statute, is the settled law of this State *(Gunther v County Road Commissioners,* 225 Mich 619; 196 NW 386 [1923] where the authorities are reviewed at length)."[10]

Where a statute attempts, in derogation of common law (see *McEvoy v Sault Ste Marie,* 136 Mich 172, 186–187; 98 NW 1006, 1010–1011 [1904]), to

---

[9] For a discussion of the early development of governmental tort immunity, *see Detroit v Blackeby,* 21 Mich 84 (1870), majority opinion of Chief Justice CAMPBELL, p 105 and dissent of Justice COOLEY, p 117. Generally see Cooperrider, *The Court, The Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187 (1973).

[10] *Cf. Larkin v County of Saginaw,* 11 Mich 88, 91 (1862), where Chief Justice MARTIN wrote: "What would be a nuisance if erected by an individual is not such when erected by authority of law and by the public, so as to confer a right of private action against the public therefor; and the same principle I think controls in this case that would had the bridge been built by authority of the Legislature."

create liability, it must be strictly construed. See also *Detroit v Putnam,* 45 Mich 263, 265; 7 NW 815, 816 (1881). Thus, the only actions which might lie against the State for defective design of roadways are those specified by the statute, in addition to the judicial exceptions for nuisance above. *Cf. Campbell, supra.*

### III

Assuming that plaintiff's cause of action does properly fit within the statute, we must determine if the action was brought before the statute of limitations ran. Plaintiff has relied upon *Rhule v Armstrong,* 384 Mich 709; 187 NW2d 223 (1971). We find that that case is distinguishable in that the act in question (the wrongful death act, MCLA 600.2922; MSA 27A.2922) failed to set out a statute of limitations. As such, the general tort statute of limitations was the proper limitation period. *Rhule* is only authority for the proposition that if it may be said that MCLA 691.1411(2); MSA 3.996(111)(2) is inapplicable to the cause of action herein then the general statute of limitations for actions against the State is appropriate.

While finding that the two-year statute of limitations was tolled, this Court, in *Forest v Parmalee,* 53 Mich App 505; 219 NW2d 806 (1974), *reh granted,* September 24, 1974, found that the statute, MCLA 691.1411(2); MSA 3.996(111)(2), applied to an action based upon bodily injury or property damage resulting from the failure of a governmental agency to keep highways in reasonable repair and a condition reasonably safe and fit for travel. In *Busha v Dept of State Highways,* 51 Mich App 397; 215 NW2d 567 (1974), the plaintiffs contended that defendant should have been subject to the general three-year statute of limitations. The

Court upheld the validity of the two-year statute and found that plaintiffs' failure to file an action, which arose from a motor vehicle accident, within that two-year period foreclosed any action. See also *Bonner v Moore,* 52 Mich App 80; 216 NW2d 458 (1974) (action based on negligent maintenance of a county highway) and *Pfaff v Ogemaw County Road Commissioners,* 354 Mich 575; 93 NW2d 244 (1958).

As plaintiff's action was filed more than two years after the date of the injury, we are unfortunately constrained to find that the action could not be maintained.

Affirmed. No costs, the construction of a statute being involved.