· ADOLPHUS BARRON v. THE CITY OF DETROIT.

*Municipal corporations—Negligence—Construction of market building.*

Where a city erects a market building under a provision of its charter authorizing, but not requiring, it to erect and maintain market houses, it will be held to the same degree of care, not only in the construction, but in the plan of the construction itself, as a private corporation or an individual.

Error to Wayne. (Reilly, J.) Argued January 19, 1893. Decided February 10, 1893.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*John J. Speed,* for appellant.

*Ira G. Humphrey* and *Orla B. Taylor* (*Edwin F. Conely,* of counsel), for plaintiff.

LONG, J. The facts in this case are not in dispute. It appears that in January, 1890, by resolution of the common council, the city engineer was instructed to prepare plans for the construction of a market building. The plans were prepared and submitted, in response to the resolution, and the board of public works was directed to advertise for proposals for constructing the building in accordance therewith. Proposals were advertised for, and the board of public works reported that Patrick Dee was the lowest bidder; and by instruction of the common council the board entered into a contract for the construction of the building with him, which contract was confirmed by the council. The plans were prepared by a

draughtsman in the office of, and under the supervision of, the city engineer.

The building was an open structure, built on iron columns about 15 feet apart, surmounted by a roof composed of wood and iron. It was built in the form of a cross; being about 300 feet one way, and 400 feet the other. The columns rested upon stone piers, but were not anchored. At the time the plans were prepared, the propriety of anchoring the columns was discussed by the draughtsman and engineer. The draughtsman thought they ought to be anchored, but the engineer thought the construction strong enough, and his opinion was followed. He claims, however, to have looked the plans over hurriedly, and that he did not examine them carefully, for the reason that a competent superintendent was to be employed, and that the building would be properly constructed under him, and if any defect existed the omission would be supplied as the work progressed. The superintendent was appointed, and the work carried on under the contractor. Before it was completed some members of the board of public works expressed the opinion that the structure was dangerous, and would go down in a wind; and on the advice of the city engineer it was examined by architects, and upon their recommendation several braces were added, to strengthen it. One of the architects thus called says that he advised the inserting of some strips, and putting bolts through them, and anchoring them down; that it should be anchored in some way. These suggestions were referred by the board of public works to the contractor, and he placed extra braces in the roof, but did not anchor the columns. It was testified by some of the architects that in such buildings, in this part of the country, 40 pounds to the square foot, wind pressure, is usually allowed; and it was further shown that the velocity of the wind, to exert 40 pounds pressure, is 90 to 100 miles an hour.

On December 23, 1890, in a wind blowing about 50 miles an hour, this market building fell, no other buildings in the vicinity being affected; so that it is apparent that the fault was in the failure to anchor the columns. The plaintiff was injured by the falling of the building. It is conceded that at the time he was lawfully upon the premises, having paid the usual license fee required and collected by the city. His claim for damages having been refused by the common council, this suit was brought, and he was awarded damages in the sum of $1,000.

By the charter of the city of Detroit the common council is authorized to erect and maintain market houses, establish markets and market places, etc.

It is contended by counsel for the city that when the common council of the city authorized the making of plans and specifications for the market building, and directed the making of the contracts for its construction, it performed a purely legislative function; that the fault which occasioned the collapse of the building was in the plan, which failed to provide for anchoring it so that it could not be lifted from its foundation by the wind; that there was evident miscalculation as to the weight being sufficient to keep it in place. Counsel insists that the fault is with legislative action, and therefore a suit grounded upon it is grounded upon a wrong attributable to the legislative body itself, as the determination to construct the public work and the prescribing of the plans, are matters of legislation on behalf of the city, under the direction of its legislative body; that in carrying out the plans there may be negligence attributable to ministerial officers, but negligence in the plans themselves must be attributable to the body that devised, ordered, or adopted them,—and therefore the action cannot be maintained, under the principle applied in *Larkin v. County of Saginaw*, 11 Mich. 88; *City of Detroit v.*

*Beckman,* 34 Id. 125; *City of Lansing v. Toolan,* 37 Id. 152; *Davis v. City of Jackson,* 61 Id. 530.

This contention would undoubtedly be correct if the city had been acting purely in a matter of public concern, in its governmental capacity or character, and the cases cited would then be applicable. In *Larkin v. County of Saginaw* the plaintiff sought to recover for damages caused by a defective bridge, and it was held that the county was not liable for the acts of the board of supervisors in the exercise of its legislative power. In *Detroit v. Beckman, City of Lansing v. Toolan,* and *Davis v. City of Jackson,* the actions were for injuries caused by defects in public highways. In each of these cases it was held that, when complaint is made that the original plan of a public work is so defective as to render the work dangerous when completed, the fault is with legislative action, for which no action can be maintained. *Ashley v. City of Port Huron,* 35 Mich. 296, is to the same effect.

Judge Dillon, in his work on Municipal Corporations (4th ed., § 66), states the rule as follows: A municipal corporation—

"Possesses a double character: The one, governmental, legislative, or public; the other, in a sense, proprietary or private. The distinction between these, though sometimes difficult to trace, is highly important, and is frequently referred to, particularly in the cases relating to the implied or common-law liability of municipal corporations for the negligence of their servants, agents, or officers, in the execution of corporate duties and powers. On this distinction, indeed, rests the doctrine of such implied liability. In its governmental or public character, the corporation is made, by the state, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state, rather than for itself. In this respect it is assimilated, in its nature and functions, to a county corporation, which, as we have seen, is purely part of the

governmental machinery of the sovereignty which creates it. Over all its civil, political, or governmental powers the authority of the legislature is, in the nature of things, supreme and without limitation, unless the limitation is found in the constitution of the particular state. But, in its proprietary or private character, the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the state at large, but for the private advantage of the compact community, which is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded, *quo ad hoc,* as a private corporation, or at least not public in the sense that the power of the legislature over it, or the rights represented by it, is omnipotent."

This rule is supported by a great number of authorities from the several states, and from the decisions of the Supreme Court of the United States, in the note to the section above quoted. It is, however, challenged by Denio, C. J., in *Darlington v. Mayor,* 31 N. Y. 164. He asserts the unlimited power of the legislature over municipal corporations and their property, and maintains that such corporations are altogether public, and all their rights and powers public in their nature, and that their property, though held for income or sale, and unconnected with any use for the purposes of municipal government, is under the control of the legislature, and not within the provisions of the constitution protecting private property. He denies the distinction between the public and private functions of city governments, and maintains that, as respects the state, all their powers and functions are public. This doctrine, however, has not obtained in this State; but it is held that cities are mentioned in our Constitution, in connection with local corporations, which are put upon a popular basis entirely beyond legislative interference, so far as local independence of action is concerned. Opinion of CAMPBELL, C. J., in *People v. Hurlbut,* 24 Mich. 86.

In *Board of Park Commissioners v. Common Council,* 28 Mich. 228, it was said by Mr. Justice COOLEY:

"We also referred, in *People v. Hurlbut,* to several decisions in the Federal Supreme Court, and elsewhere, to show that municipal corporations, considered as communities endowed with peculiar functions for the benefit of their own citizens, have always been recognized as possessing powers and capacities, and as being entitled to exemptions, distinct from those which they possess or can claim as conveniences in state government. If the authorities are examined it will be found that these powers and capacities, and the interests which are acquired under them, are usually spoken of as *private,* in contradiction to those in which the state is concerned, and which are called *public;* thus putting these corporations, as regards all such powers, capacities, and interests, substantially on the footing of private corporations."

This same distinction was also made in *City of Detroit v. Corey,* 9 Mich. 165; *Mayor v. Park Commissioners,* 44 Id. 602; *Niles Water Works v. City of Niles,* 59 Id. 324; *Cooper v. Detroit,* 42 Id. 584.

Under the facts in this case, the city must be held to the same degree of care, not only in the construction, but in the plan of the construction itself, as would a private corporation or an individual. Under the provisions of the charter granting the power to erect it, there was no imperative duty cast upon the city to provide for a market building. It could build it or not, as the council might determine. It is not like the case of a public highway, or the building of a bridge, where the duty is cast upon the municipality, by general law, to build and maintain them. Had this building been owned by an individual or a private corporation, the liability of either for this accident would not have been questioned, under the facts stated.

The judgment must be affirmed, with costs.

The other Justices concurred.