BUSH v OSCODA AREA SCHOOLS

OPINION OF M. J. KELLY, P. J.

1. SCHOOLS AND SCHOOL DISTRICTS—PUBLIC BUILDINGS—DUTY TO MAINTAIN—DEFECTIVE BUILDINGS—USE OF BUILDING—STATUTES.

An allegation that a school district violated its statutory duty to maintain and repair public buildings so that they are free from dangerous or defective conditions, made by a plaintiff student who was injured by an explosion in a classroom which was being used for laboratory work, was properly dismissed because the injury resulted not from a defective condition of the building but from the use to which the classroom was put (MCLA 691.1406; MSA 3.996[106]).

2. TORTS—STRICT LIABILITY.

Strict liability in tort is not recognized in Michigan.

3. JUDGMENT—SUMMARY JUDGMENT—SCHOOLS AND SCHOOL DISTRICTS —GOVERNMENTAL IMMUNITY—NEGLIGENCE—DISCRETIONARY ACTS.

Summary judgment was erroneously granted in favor of a defend-

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Buildings § 44.
[2] 74 Am Jur 2d, Torts § 14.
[3] 68 Am Jur 2d, Schools §§ 320, 321.
[4] 73 Am Jur 2d, Summary Judgment § 17.
[5] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 55.
[6] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 101.
[7] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 48.
[8] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 31–32.
[9] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 90.
[10] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 46.
[11] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 88.
[12, 16] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 95.
[13, 15, 17] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 74.
[14] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 150.

ant teacher and the school's principal where the plaintiff, a student injured by an explosion in a classroom being used as a laboratory, alleged personal, actionable negligence on the part of these defendants and where neither of these defendants was involved in the performance of "discretionary acts" as used to define the scope of governmental immunity for public officials.

OPINION OF W. R. PETERSON, J.

4. MOTIONS—GOVERNMENTAL IMMUNITY—SUMMARY JUDGMENT— COURT RULES.

The appropriate means of presenting a governmental immunity challenge to a complaint is by motion for summary judgment because on facts falling within the doctrine a claimant has no cause of action (GCR 1963, 117.2[1]).

5. TORTS—IMMUNITY—GOVERNMENTAL IMMUNITY—IMMUNITY FROM SUIT—IMMUNITY FROM LIABILITY.

There is a distinction between governmental immunity from suit and governmental immunity from liability; the state and its political subdivisions and municipal corporations are not immune from suit, nor is any individual working for and representing the government immune from suit except where an action is brought against him solely in a representative capacity.

6. TORTS—GOVERNMENTAL IMMUNITY—DUTY TO INDIVIDUAL—DUTY TO PUBLIC.

The test by which it is determined that governmental immunity from liability does or does not exist in a particular case is the existence of a duty to one injured as distinguished from duty solely to the public; therefore, governmental immunity from liability is not descriptive of an affirmative defense or defense in bar, but rather characterizes a class of cases in which the law recognizes no cause of action; where there is no duty there can be no actionable breach.

7. TORTS—PUBLIC BODIES—DISCRETIONARY ACTIONS—DUTY TO PUBLIC —DUTY TO PRIVATE PERSONS.

A public body which has the power to act or not to act as in its discretion best fulfills the public purpose for which the power exists has a duty in the exercise of that discretion solely to the public and to no private person.

8. TORTS—PUBLIC BODIES—GOVERNMENTAL FUNCTIONS—PROPRIETARY FUNCTIONS—DUTY—PUBLIC OFFICERS.

The principle that where a governmental unit is engaged in a

governmental function rather than a proprietary function its duty is purely public and there is no duty to private individuals, applies to governmental units alone and not to individual public officers.

9. TORTS—GOVERNMENTAL OFFICERS—LIABILITY—DUTY—GOVERNMENTALLY AUTHORIZED CONDUCT.

The inquiry as to the tort liability of an individual governmental officer when an injury has been proximately caused by the act or omission of that officer is whether liability for the injury may be avoided upon the ground that the conduct complained of was governmentally authorized; no one is excepted from ordinary standards of duty and care merely because he is a governmental officer or employee.

10. OFFICERS—TORTS—IMMUNITY FROM LIABILITY—SCOPE OF IMMUNITY.

The discretionary acts of executive and administrative governmental officers for which they will be immune from tort liability should be narrowly limited; the claim of an individual for freedom from improper governmental interference should prevail over the claim of a public officer for immunity from the consequences of his acts unless the harm complained of has resulted from the performance of a clearly defined public duty.

11. NEGLIGENCE—ADMINISTRATION—SUPERVISORS—PRINCIPAL AND AGENT—RESPONDEAT SUPERIOR.

A person charged with administrative and supervisory duties, public or private, is not thereby liable by application of the doctrine of *respondeat superior* for the negligence of employees subject to his authority; negligence of an agent may be imputed to a principal, but not to another agent.

12. NEGLIGENCE—SCHOOLS AND SCHOOL DISTRICTS—SCHOOL SUPERINTENDENT—NEGLIGENCE OF TEACHER.

A claim against a school superintendent, arising out of an injury to a student in a classroom, was properly dismissed where there were no allegations of personal neglect on the part of the superintendent and the negligence of the teacher is not imputed to him merely because he is in a superior and supervisory position; the question of immunity is not involved.

13. SCHOOLS AND SCHOOL DISTRICTS—JUDGMENT—SUMMARY JUDGMENT—NEGLIGENCE—ISSUES OF FACT.

Summary judgment in favor of a defendant teacher and the school principal is improper where the complaint, by a student injured in an accident occurring in a classroom being used as a

laboratory, alleged personal negligence on the part of the teacher in the conduct of the class and where the principal had direct responsibility and knowledge of the use to which the classroom was being put; such allegations present issues of fact for the jury.

14. TORTS—PUBLIC BUILDINGS—GOVERNMENTAL AGENCIES—STATUTES —CAUSE OF INJURY.

A statutory duty is imposed upon all governmental agencies to keep public buildings safe for the users thereof and where there is a breach of this duty the governmental agency loses its immunity from liability to the user; that which is operably defective, out of repair, or improperly maintained is actionable, but there is no cause of action if the thing producing the injury is not a part of the building proper or if the injury is caused by activities within the building rather than by a defect of the building itself (MCLA 691.1406; MSA 3.996[106]).

15. SCHOOLS AND SCHOOL DISTRICTS—JUDGMENT—SUMMARY JUDG-MENT—CONDITION OF BUILDING—COURSE OF CONDUCT.

Summary judgment was properly granted in favor of a defendant school district where the plaintiff, who was injured in an explosion of chemicals in a classroom being used for laboratory purposes, asserted a violation of the duty to maintain a safe public building but did not state facts indicating an inherently dangerous condition of the building for the contemplated use, but rather alleged a course of classroom conduct which would be dangerous even in a properly equipped laboratory.

CONCURRENCE BY BRONSON, J.

16. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL SUPERINTENDENT—GOV-ERNMENTAL IMMUNITY—FAILURE TO STATE CLAIM.

The question of whether a defendant school superintendent, in an action by a student arising out of a classroom accident, would be protected by governmental immunity need not be considered where the plaintiff's complaint fails to state any claim against the superintendent upon which relief can be granted.

17. SCHOOLS AND SCHOOL DISTRICTS—NEGLIGENCE—GOVERNMENTAL IMMUNITY—DISCRETIONARY ACTS.

Summary judgment in favor of a defendant teacher and the school principal was erroneous in an action by a student injured in a classroom accident where the complaint alleged personal, actionable negligence on the part of these defendants and they were not involved in the performance of "discretion-

ary acts" as that phrase is used to define the scope of governmental immunity for public officials.

Appeal from Iosco, Allan C. Miller, J. Submitted March 8, 1976, at Lansing. (Docket No. 24334.) Decided December 9, 1976. Leave to appeal applied for.

Complaint by Annie M. Bush, for herself and as next friend of Tracey A. Foxworth, against the Oscoda Area Schools, Gaye A. Manning, William F. Estes, and T. C. Filppula for damages for injuries caused by an explosion in a school classroom. Summary judgment for defendants. Plaintiff appeals. Affirmed in part, reversed in part.

*Boyce, Yahne & Wenzel,* for plaintiff.

*Robert P. Keil,* for defendant Oscoda Area Schools.

*Freel & Huck, P. C.,* for defendants Estes, Manning and Filppula.

Before: M. J. Kelly, P. J., and Bronson and W. R. Peterson,* JJ.

M. J. Kelly, P. J. This is an appeal from the trial court's grant of summary judgment of no cause for action in favor of all defendants. Plaintiff brought suit for personal injuries against her teacher, school principal, superintendent of the school district and the school district itself. We affirm as to the superintendent and school district but reverse as to the teacher and principal.

On February 3, 1972 plaintiff's 14-year-old daughter was attending a physical science class in a mathematics classroom which was neither de-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

signed nor equipped for laboratory work. Open flame alcohol wick lamps were used in the experiments. Wood alcohol (methanol) was stored in bulk in an old plastic jug which was allegedly damaged and split. The jug and the alcohol lamps were kept on a counter at the rear of the classroom. Plaintiffs' complaint alleges that on the date of the injury some of the fuel had been spilled on the counter and a lighted lamp had been placed beside the fuel container, and that as plaintiff attempted to extinguish the lamp there was an explosion and fire igniting her clothing and inflicting severe second- and third-degree burns.

One count of plaintiffs' complaint was founded upon negligence, a second on nuisance and a third on violation of the statutory duty to maintain and repair public buildings so they are free from dangerous or defective conditions. MCLA 691.1406; MSA 3.996(106). A fourth count charged strict liability in tort. We find that the grant of summary judgment as to counts two, three and four was correct. Count two is controlled by *Stremler v Department of State Highways,* 58 Mich App 620; 228 NW2d 492 (1975), and *Buddy v Department of Natural Resources,* 59 Mich App 598; 229 NW2d 865 (1975). The dismissal of count three was correct because the injury did not really result from a defective condition of the building but from the use to which the classroom was put. See *Zawadzki v Taylor,* 70 Mich App 545; 246 NW2d 161 (1976). Dismissal of count four was correct because strict liability is not recognized in Michigan, *Rutherford v Chrysler Motors Corp,* 60 Mich App 392; 231 NW2d 413 (1975).

Plaintiffs' complaint does not state any claim against the defendant school superintendent upon which relief can be granted. Thus the question of whether he would be protected by governmental

immunity need not be considered and the grant of summary judgment on all counts by the lower court was correct as to said school superintendent and school district. MCLA 691.1401 *et seq.;* MSA 3.996(101), *et seq.*

Plaintiffs' complaint does allege personal, actionable negligence on the part of the defendant teacher and the defendant principal. We find that neither of these defendants was involved in the performance of "discretionary acts" as that phrase has been used to define the scope of governmental immunity for public officials. The trial court therefore erred in granting summary judgment in favor of these defendants. *Walkowski v Macomb County Sheriff,* 64 Mich App 460; 236 NW2d 516 (1975), *Wynn v Cole,* 68 Mich App 706; 243 NW2d 923 (1976), *Lovitt v Concord School District,* 58 Mich App 593; 228 NW2d 479 (1975).

Affirmed as to the defendant school superintendent and the school district. Reversed as to defendant teacher and the defendant principal as to count one only. Costs to plaintiffs.

W. R. Peterson, J. This is an appeal from the trial court's governmental-immunity premised summary judgment in favor of all defendants. The action, for classroom injuries to a student, seeks damages from the class teacher, school principal, superintendent of the district, and the school district. We affirm as to the superintendent and school district but reverse as to the teacher and principal.

On February 3, 1972, Tracey Ann Foxworth, age 14, herein referred to as plaintiff, was a high school student in defendant school district. Among her courses of study was a class in physical science. Although the course involved various scien-

tific experiments, it was not held in a laboratory but in a mathematics classroom which was neither designed nor equipped for laboratory work.[1] Open flame alcohol wick lamps were used to produce flame or heat for experiments. Wood alcohol (methanol) to fuel the lamps was periodically obtained from a large container in the chemical laboratory and placed in an old plastic jug which had contained duplicator fluid, which jug was allegedly damaged and split. There being no closed storage area in the room, the jug and the alcohol lamps were kept on a counter at the rear of the classroom. The complaint alleges that on the date in question there was spilled alcohol on the counter, that a lighted lamp had been placed on the counter beside the methanol jug and that, as plaintiff moved to extinguish the lamp, there was an explosion and fire igniting plaintiff's clothing and inflicting severe second- and third-degree burns upon her.

The complaint alleges various acts of negligence, including affirmative acts in leaving spilled alcohol exposed to ignition sources; failure to properly handle and store the methanol when open flame lamps would be in use proximate thereto; and, keeping the methanol in an improper and damaged container. Acts of omission are charged by failure to warn and supervise students in handling methanol around flame, failure to train students and school personnel in use of the fire alarm system and fire extinguisher equipment, and failure to have the fire alarm equipment in working

---

[1] The class had been held in a chemical laboratory room but was moved to the math room during the school year because of overcrowding. The classroom, unlike the laboratory, had no safety shower, no venting or exhaust fan for fumes, no closed storage area for chemicals, no fixed desks, and no gas outlets (thus necessitating use of alcohol lamps).

order.[2] As to facilities, the complaint alleged that the school had failed to comply with laboratory requirements of the United States Government which requirements had been agreed to by defendant district as a condition for Federal construction funds; that the class was held in a room not designed, constructed or equipped for chemical experiments; and that too many students had been scheduled into the class so that the resulting overcrowding caused congestion of students, equipment and supplies, storage space was lacking and proper supervision by the teacher was impaired.

One count of the complaint was founded upon negligence, a second asserted nuisance,[3] a third asserted violation of the statutory duty to maintain safe public buildings for which governmental immunity is waived[4] and a fourth asserted the so-called strict liability cause of action which is not recognized in Michigan. *Rutherford v Chrysler Motors Corp*, 60 Mich App 392; 231 NW2d 413 (1975). The complaint also challenged the constitutionality of the doctrine of governmental immunity.[5]

[2] Discovery proceedings brought the disclosure that the fire alarm system had been disconnected to prevent false alarms.

[3] An issue which we consider disposed of by *Stremler v Department of State Highways*, 58 Mich App 620; 228 NW2d 492 (1975), and *Buddy v Department of Natural Resources*, 59 Mich App 598; 229 NW2d 865 (1975).

[4] MCLA 691.1406; MSA 3.996(106).

[5] An issue which does not require discussion in view of the many decisions of this Court rejecting that argument, *e.g., Buddy v Department of Natural Resources, supra,* and the pendency of the question before the Michigan Supreme Court.

Our reasoning herein, however, suggests that the equal protection question as to governmental immunity (where it still exists in Michigan), involves something more than classification of claimants as injured by private or public tortfeasors, *Reich v State Highway Department*, 386 Mich 617, 623; 194 NW2d 700 (1972), or classification of place or cause of injury, *Pichette v Manistique Public Schools,* Holbrook dissenting, 50 Mich App 770, 783–785; 213 NW2d 784 (1973).

Rather, in defining the existence of a cause of action against a

To the complaint, all defendants filed motions for summary judgment under GCR 1963, 117.2(1), asserting that the complaint failed to state a claim upon which relief could be granted because of the defense of governmental immunity. All parties indicated to the trial court that depositions and interrogatories could be considered and that the facts were not in dispute.[6]

At the outset, we must note the lack of consistency in terminology in dealing with "governmental immunity" questions, and in defining the appropriate procedural means for raising and resolving such a defense. Thus, in countless cases, as in the trial court here, the question has been raised and disposed of by motion for summary judgment under GCR 1963, 117.2(1) authorizing judgment without trial where the claimant "has failed to state a claim upon which relief can be granted". But in *Cibor v Oakwood Hospital,* 14 Mich App 1, 3, fn 1; 165 NW2d 326 (1968), where a charitable immunity defense was raised by motion, the majority described immunity as a defense which operated "to extinguish or cut off the right to relief even though the facts pleaded would otherwise state a claim", and therefore to be appropriately raised by motion for accelerated judgment under

governmental unit in terms of duty and breach, the constitutional inquiry must be directed to the propriety of at least two major governmental-private distinctions, (1) that, as to primary liability, the public duties imposed upon a governmental unit or public officer, entail no duties to individual members of the public save as such duty is imposed by legislative enactment, and (2) that the governmental unit has no imputed liability, *respondeat superior,* for the negligent or intentional wrongs of its officers or employees.

[6] Which is not the same, of course, as saying that there is no issue of fact. Evidentiary facts may be undisputed, but only when they are susceptible of but one interpretation and the ultimate factual conclusions to be drawn therefrom are so evident that all reasonable men would agree thereon can it be said that there is no issue of fact. *Miller v Miller,* 373 Mich 519; 129 NW2d 885 (1964).

GCR 1963, 116.[7] In *Bloss v Williams,* 15 Mich App 228, 231; 166 NW2d 520 (1968), motion for accelerated judgment rather than motion for summary judgment was held to be the appropriate means of raising the defense of quasi-judicial immunity, described therein as "a legal bar to plaintiff's claim". So, *Curry v Detroit,* 49 Mich App 240, 241, fn 1; 211 NW2d 559 (1973), *Lovitt v Concord School District,* 58 Mich App 593, 595, fn 1; 228 NW2d 479 (1975), *Lockaby v Wayne County,* 63 Mich App 185, 187, fn 1; 234 NW2d 444 (1975), *Buddy v Department of Natural Resources, supra,* and *Van Liere v State Highway Department,* 59 Mich App 133, 136, fn 1; 229 NW2d 369 (1975), held that the defense of governmental immunity was improperly raised by motion for summary judgment and should have been raised by motion for accelerated judgment. In each instance, the difference was treated as mis-labeling, and of no significance. Only in the latter two cases did the Court attempt to designate the applicable subsection of the accelerated judgment rule, indicating that GCR 1963, 116.1(5) was appropriate since governmental immunity is a "disability of the moving party".[8] In *Walkowski v Macomb County*

---

[7] The dissent in *Cibor* thought the question was whether the defense existed as a matter of fact, and was appropriately raised by summary judgment motion under GCR 117.2(3) asserting no genuine issue of fact (requiring denial of the motion if there is an issue of fact). The dissent seems to assume that if defendant was in fact a charitable institution, then as a matter of law there was no cause of action pleaded so that summary judgment would then have been appropriate under GCR 117.2(1).

[8] So also, *Zawadzki v Taylor,* 70 Mich App 545; 246 NW2d 161 (1976).

GCR 1963, 116.1(5) authorizes accelerated judgment where:

"the claim is barred because of release, payment, prior judgment, statute of limitations, statute of frauds, infancy, or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action."

The language represents (with one addition, payment) a grouping of

*Sheriff,* 64 Mich App 460; 236 NW2d 516 (1975),
the Court viewed an individual defendant as *im-mune from suit* so that accelerated judgment was
appropriate for lack of jurisdiction over the person
under GCR 1963, 116.1(1). And in *Knapp v Dear-born,* 60 Mich App 18; 230 NW2d 293 (1975), the
Court treated the governmental immunity ques-tion as one involving lack of jurisdiction over the
subject matter to be raised under GCR 1963,
116.1(2).[9]

---

the defenses listed as grounds for motion to dismiss under 1945 Court
Rule 18, § 1, subsections (e) through (j). Subsection (i) read as follows:
"(i) That the cause of action did not accrue against defendant because
of his infancy or other disability."
Then and now, we think, it refers to nothing more than the lack of
legal competence of one against whom a claim is asserted at the time
the alleged claim arose.

[9] If either *Walkowski* or *Knapp* are correct in categorizing govern-mental immunity as a jurisdictional defense, then there would be
serious differences in procedure for, and consequences of, motion
disposition. As to consequences, the defenses that may be raised
under GCR 1963, 116.1(1)–(4) result in dismissal of the suit without
adjudication on the merits and without prejudice; the defenses that
may be raised under GCR 1963, 116.1(5) are defenses in bar foreclos-ing an otherwise (presumably) valid claim and disposing of the case
with prejudice.

Where the defense does not appear on the face of the pleading
attacked, under GCR 1963, 116.3, the moving party must support his
position by affidavit or other evidence. Procedurally, if there is a
disputed question of fact, evidentiary or inferential, whether the court
may dispose of the motion as a preliminary question depends upon
the nature of the motion. GCR 1963, 116.3 goes on to provide:
" * * * As to defenses and objections based upon (1), (2), (3), or (4) in
sub-rule 116.1, the court may order immediate trial of any disputed
questions of fact, and judgment may be rendered forthwith if the
proof shows that the moving party is entitled to judgment upon the
facts as determined; * * * As to defenses and objections based upon
sub-rule 116.1(5), the court may order immediate trial of any disputed
questions of fact, and judgment may be rendered forthwith if the
proof shows that the moving party is entitled to judgment on the facts
as determined; or the court may postpone the hearing on the matter
until the trial on the merits, and shall postpone the hearing if a jury
trial has been demanded pursuant to right on or before the day of the
hearing."
The court in *Knapp* followed an unsubstantiated statement in 1
Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p
324, commenting on GCR 1963, 116.3, which misapplied the last

The appropriate means of presenting a governmental immunity challenge to a complaint, under present practice, as we view it, is by motion for summary judgment under GCR 1963, 117.2(1), since on facts falling within the doctrine the claimant simply has no cause of action. If governmental immunity from suit[10] still existed in Michigan, the defense would be jurisdictional, raised by motion for accelerated judgment, and subject to summary trial and disposition as a preliminary question even when the facts were in dispute. But the state, by the Court of Claims Act[11] and the governmental immunity statute,[12] has given up its own immunity from suit, and has never provided for the creation of political subdivisions or municipal corporations without simultaneously giving them the power to sue and be sued.[13] And we know of no act or common law precedent which holds any individual immune from suit save where the suit was brought against him solely in a representative capacity.[14] No individual is immune from

---

sentence of the rule so as to require jury trial (where demanded) for all accelerated judgment motions and not merely those under 1963 GCR 116.1(5), an appropriate result for *Knapp* but for the wrong reasons. Cf. *Erickson v Goodell Oil Co, Inc,* 384 Mich 207; 180 NW2d 798 (1970), which quoted the last sentence of GCR 1963, 116.3 in holding jury trial mandated on a disputed factual issue without discussing the nature of the accelerated judgment motion but on the apparent assumption that it was in bar under sub-rule 116.1(5). This procedural distinction between subsection (1)–(4) cases and subsection (5) cases did not exist under 1945 Court Rule 18 which extended the right to jury trial to disputed fact issues on all motions under the rule, and not merely to those disposing of the case with prejudice.

[10] The distinction is drawn in *Manion v State Highway Commissioner,* 303 Mich 1, 19; 5 NW2d 527 (1942), between governmental immunity from suit and governmental immunity from liability.

[11] MCLA 600.6401; MSA 27A.6401.

[12] Which might more appropriately be called the governmental immunity *and liability* statute. 1964 PA 170, as amended; MCLA 691.1401 et seq.; MSA 3.996(101) *et seq.*

[13] *See, e.g.,* MCLA 41.2; MSA 5.2 (townships), MCLA 45.3; MSA 5.283 (counties), MCLA 61.12; MSA 5.1212 (villages), MCLA 81.15; MSA 5.1605 (cities), MCLA 340.352; MSA 15.3352 (school districts).

[14] Cf. *McDowell v Warden of Ionia Reformatory,* 169 Mich 332; 135

suit. *Walkowski, supra,* misspoke in referring to the Director of the Michigan State Police as being immune from suit rather than as being immune from liability.[15]

We do concur with the *Walkowski* disapproval of the seemingly *à fortiori* language in *Nichols v Zera,* 33 Mich App 274, 276–277; 189 NW2d 751 (1971), and *Lovitt v Concord School District, supra,* p 598, language similar to which appears in *Rose v Mackie,* 22 Mich App 463, 466; 177 NW2d 633 (1970), and *Daniels v Grand Rapids Board of Education,* 191 Mich 339, 357; 158 NW 23 (1916), that if a governmental unit enjoys governmental immunity, therefore its individual officers and employees also have immunity.[16] It is clear in *Daniels* and *Nichols* that the breach of duty with which the individuals were charged was the same as that alleged against the school district itself and that the only point being made was simply that if the school district had no liability for the alleged consequences of the legislative decisions of its governing body, neither did the individual members thereof, and in *Lovitt* and *Rose* it seems apparent that the stated identity of immunity followed because there was felt to be a governmental duty which was identical for both the individ-

NW 265 (1912), *Longstreet v County of Mecosta,* 228 Mich 542, 548–551; 200 NW 248 (1924). Former statutes, as noted in *McDowell,* called for suit against many public officers in their representative capacity, *e.g.,* Rev Stat 1846, Ch 119, § 7 (highway commissioners).

[15] None of the cases cited in *Walkowski* treat in terms of immunity from suit and two, *Amperse v Winslow,* 75 Mich 234; 42 NW 823 (1889), and *Rose v Mackie,* 22 Mich App 463; 177 NW2d 633 (1970), speak of "no cause of action" and "immunity from liability", respectively.

[16] Nor does it follow that the reverse is true. Both *Daniels* and *Rose* involve facts on which there is today a statutory duty for the breach of which the governmental units would be liable but without the individual defendants named therein having personally been guilty of any breach of duty which would result in their liability. Similarly, *see Longstreet v County of Mecosta,* 228 Mich 542; 200 NW 248 (1924).

ual officer and the governmental agency.[17] As *Lovitt* made clear in speaking of personal acts of negligence, where the duty is not the same, a different result may follow.

For it is by this test, the existence of a duty to one injured as distinguished from duty solely to the public, that governmental immunity from liability does not or does exist in a particular case.[18] Hence our conclusion that the concept of governmental immunity from liability is not descriptive of an affirmative defense or defense in bar, but rather characterizes a class of cases in which the law recognizes no cause of action:[19] where there is

---

[17] Similarly, *see Longstreet v County of Mecosta, infra,* pp 545–548.

[18] The liability of both the governmental agency and the individual officer are determined by the same test. Thus, in *Daniels v Grand Rapids Board of Education, supra,* p 349, the Court said:

" 'The duty of providing means of education * * * is a purely public duty, in the discharge of which the local body, as the State's representative, is exempt from corporate liability for the faulty construction, or want of repair, of its school building, or the torts of its servants employed therein.' "

And in *Longstreet v County of Mecosta, supra,* pp 545–546, the Court said as to individual officers:

"1. We shall first consider whether the individual members of the board of county road commissioners and the board are liable. There is no allegation of willful negligence on the part of the members of the board, nor is the action for trespass by them upon property of an individual, nor for acts committed in excess of their authority. They are public officials owing a duty to the public generally as contradistinguished from a duty to the individual members of the public. In 2 Cooley on Torts (3d Ed.), 756, the rule is thus announced:

" 'The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages.' "

[19] Immunity is one kind of case in which there is no duty to the injured party. The absence of liability of a governmental employee to an injured party may result from a lack of duty for reasons unrelated to governmental policy considerations, *see Walkowski, supra,* p 466, but where the lack of duty does arise from such consideration, we call it governmental immunity.

no duty there can be no actionable breach. We recognize that it is not possible to reconcile and reduce to uniformity the decisions by which our present law of sovereign immunity has evolved,[20] and that many factors have gone into that evolution, *e.g.,* the primitive concepts of local governmental units, corporate and unincorporated, and the view to be taken of the charters of the former,[21] the lack of funds for public improvements, the lack of funds or means of raising them for the payment of tort claims,[22] the view that the determination of claims against the state was a legislative function,[23] and the concern that the exercise of discretionary political or legislative power ought not be hampered by liability based on a hindsight view that public works should have been undertaken which were not, or that those undertaken were inadequate or deficient.[24]

And this latter, we think is the most important, if, indeed, it is not a synopsis of all the foregoing; that if a public body has the power to act or not to act as in its discretion best fulfills the public

[20] The description of sovereign immunity as an English heritage residual of the divine rights of kings ("the King can do no wrong") seems to be a modern innovation of courts in this country. No such rationale (or apology) is to be found in our early cases, or in the English precedents from which these cases drew.

[21] *Commissioners of Highways v Martin,* 4 Mich 557 (1857), *Detroit v Blackeby,* 21 Mich 84 (1870).

[22] The underlying basis for *Russell v Men of Devon,* 100 Eng Rep 359 (K B 1788), generally cited as the English source of the common-law doctrine of municipal corporation immunity from tort liability.

[23] *People ex rel Ayres v State Board of Auditors,* 42 Mich 422; 4 NW 274 (1880).

[24] *Larkin v County of Saginaw,* 11 Mich 88 (1862), *Dewey v Detroit,* 15 Mich 307 (1867), *Maxmilian v New York,* 62 NY 160; 20 Am Rep 468 (1875). Thus legislation for the general public welfare may be specifically harmful to some; and, fearfully, public works altered in consequnce of the verdict of one judge or jury, might thereafter cause harm or risk of harm to another, to be, in turn, eschewed by another judge or jury opening the door to further alteration, etc. ad infinitum; *Detroit v Beckman,* 34 Mich 125 (1876).

purpose for which the power exists, then its duty
in the exercise of that discretion is solely to the
public and to no private person;[25] and that in the
interest of conscientious exercise of such discre-
tionary power and that those upon whom the
responsibility of such decisions rests may act with
finality, no person claiming injury therefrom may
unsettle such decisions by asserting that they were
made in violation of a duty to him. It is a rationale
equally applicable not only to governmental units
proper but also to individual public officers who
have discretionary powers.[26] In *Williams v Detroit,*
EDWARDS dissenting, 364 Mich 231, 261; 111 NW2d
1 (1961), the rationale is stated thus:

"Also, there are and will continue to be many situa-
tions in relation to which real or fancied grievances
exist where governmental freedom from liability will
persist on wholly different grounds. Legislative bodies,
for example, have the right to make many types of
decisions which may do harm to some. Subsequent
history may clearly demonstrate that some of those
decisions were wrong. Discretion implies the right to be
wrong. So long as those decisions are within the discre-
tion vested in the legislative body, there is clearly
neither breach of duty nor a right to damages. The

[25] *Dermont v Mayor of Detroit,* 4 Mich 435 (1857). But if a body
with discretionary powers acts on a matter as to which it has no
power, and thus no discretion, its conduct impairing rights of person
or property are actionable. *Sheldon v Village of Kalamazoo,* 24 Mich
383, 385–387 (1872).

[26] Indeed, in this writer's judgment, this rationale probably origi-
nated from the much older doctrine of judicial immunity. So in
*Gordon v Farrar,* 2 Doug (Mich) 411 (1847), a 12-1/2 cent verdict for
plaintiff against election inspectors who had barred him from voting
as not being "a white male citizen" was reversed on the ground that
in determining questions of color the inspectors were not acting
ministerially but judicially; in *Wall v Trumbull,* 16 Mich 228 (1867),
township board members where acting under a discretionary statute
were equated with judicial officers and their duties described as
judicial; and in *Amperse v Winslow,* 75 Mich 234; 42 NW 823 (1889),
members of a city council were considered as having judicial discre-
tion in passing on liquor bonds.

instant case, a tort action, does not in any manner alter the fact that actions or decisions of a legislative, executive, or judicial character which are performed within the scope of authority of the governmental body or officer concerned continue to enjoy freedom from liability.

"The people place great powers of decision making in the hands of their government. In the exercise of discretionary power, governmental duty runs to the benefit of the whole public, rather than to individuals. It is of great importance that this crucial function of democratic decision making be unhampered by litigation."

With all the varying policy considerations of the early cases, the dispositions thereof are in terms of want of liability because of absence of private duty; that absent legislation to the contrary, the imposition of public duty upon a governmental unit or officer carries with it no duty to individual members of the public.[27]

Subsequently the evolution of the concept of governmental function as distinguished from proprietary functions which might be carried on by governments, confining immunity to the former,[28] made no change in the principle; where the gov-

---

[27] And if the Legislature did not intend the governmental unit to be primarily liable for its conduct in the exercise of its public duties, it would not be liable on a theory of imputed negligence, *respondeat superior,* for the acts of its officers and employees. *O'Leary v Board of Fire and Water Commissioners,* 79 Mich 281, 286–287; 44 NW 608 (1890), *Nicholson v Detroit,* 129 Mich 246, 250; 88 NW 695 (1902), *Daniels v Grand Rapids Board of Education, supra.*

[28] Beginning with *Barron v Detroit,* 94 Mich 601; 54 NW 273 (1893), which involved the collapse of the city market building, considered to have been constructed as a proprietary or private act of the city rather than for use in a "governmental capacity or character", so that regarding it the city was to be regarded as a private corporation, to *Bofysil v Department of State Highways,* 44 Mich App 118; 205 NW2d 222 (1972), *lv den* 389 Mich 768 (1973), which extended proprietary function liability to the state itself. *Cf. Richards v Birmingham School District,* 348 Mich 490, 521; 83 NW2d 643 (1957) (EDWARDS dissenting), that in a sense everything done by a governmental unit is "governmental".

ernmental unit is engaged in a governmental func-
tion, its duty is purely public and there is no duty
to private individuals. This judicially developed
concept of governmental function vis-à-vis proprie-
tary function, appropriated by the Legislature in
the governmental immunity act as the apparent
"either/or" distinction between liability and non-
liability generally,[29] is a liability yardstick, how-

[29] Thus, the title to 1964 PA 170, as amended by 1970 PA 155, reads
as follows:

"An act to make uniform the liability of municipal corporations,
political subdivisions, and the state, its agencies and departments,
when engaged in the exercise or discharge of a governmental func-
tion, for injuries to property and persons; to define and limit such
liability; to define and limit the liability of the state when engaged in
a proprietary function; to authorize the purchase of liability insur-
ance to protect against loss arising out of such liability; to provide for
defending certain claims made against public officers and paying
damages sought or awarded against them; and to repeal certain acts
and parts of acts."

Section 7 of the act, MCLA 691.1407; MSA 3.996(107), reads as
follows:

"Except as in this act otherwise provided, all governmental agencies
shall be immune from tort liability in all cases wherein the govern-
ment agency is engaged in the exercise or discharge of a governmen-
tal function. Except as otherwise provided herein, this act shall not be
construed as modifying or restricting the immunity of the state from
tort liability as it existed heretofore, which immunity is affirmed."

Section 13 of the act, MCLA 691.1413; MSA 3.996(113), reads, in part,
as follows:

"The immunity of the state shall not apply to actions to recover for
bodily injury or property damage arising out of the performance of a
proprietary function as herein defined. Proprietary function shall
mean any activity which is conducted primarily for the purpose of
producing a pecuniary profit for the state, excluding, however, any
activity normally supported by taxes or fees."

Though not involved in the instant case, there are some interesting
questions:

1. Is every non-governmental function a proprietary function, and
vice versa? Does liability rest on being outside the definition of
governmental function or within the definition of proprietary func-
tion? Are not governmental acts which are neither proprietary nor
within a governmental function actionable? See *Sheldon v Village of
Kalamazoo*, 24 Mich 383 (1872).

2. Are governmental and proprietary functions mutually exclusive?
See *Foss v Lansing*, 237 Mich 633; 212 NW 952 (1927), *Matthews v
Detroit*, 291 Mich 161; 289 NW 115 (1939), *Daszkiewicz v Detroit
Board of Education*, 301 Mich 212; 3 NW2d 71 (1942), *Bofysil v
Department of State Highways, supra*.

ever, for governmental units alone.[30]

As to the tort liability of individual public officers, we are not concerned with the governmental immunity act nor with considerations of governmental-proprietary functions; we are concerned with determining whether, when an injury has been proximately caused by the act or omission of one who is a governmental officer, liability therefor may be avoided upon the ground that the conduct complained of was, as such, governmentally authorized. The statement of the question posits the answer. No one is excepted from ordinary standards of duty and care merely because they are governmental officers or employees, *e.g.,* the teachers in *Lovitt, supra,* and the policemen in *Sherbutte v Marine City,* 374 Mich 48; 130 NW2d 920 (1964). But if a public officer by the exercise of his proper authority, in the manner authorized, causes injury to another he has no liability because his duty lies only to the public. And it matters not whether his duty is ministerial or discretionary.[31] In the first case, his duty is defined

_____

3. Is it significant that § 13 of the act refers only to state liability in performance of a proprietary function and does not thus speak in terms of other governmental agencies for whom § 7 claims immunity from tort liability when they are engaged in governmental functions?

[30] As with the cases originally setting forth these governmental-proprietary concepts, the governmental immunity act nowhere speaks of liabilities and immunities of individual public officers and employees but only of the state and lesser governmental units. The act, while authorizing governmental indemnification of individual officers and employees (§ 8) does so in agency terms unrelated to governmental proprietary functions. And since we view *Williams v Detroit, supra,* as limited to governmental immunity from imputed negligence liability, that decision had no effect on immunity of individual officers which was not lost thereby and had no need of restoration by the governmental immunity act.

[31] For the distinction between ministerial and discretionary duties, *see Williams v Detroit,* quoted above and the footnote at 261 therein; and *Wall v Trumbull, supra,* fn 26, 235–236, where the Court spoke of discretionary powers in terms of judicial decision-making thus:

"In determining whether the members of the township board voting

in prescribed methods of conduct and that duty is
either performed rightly or wrongly; if rightly, as
with a sheriff's execution of process regular on its
face, there is no liability; if wrongly, whether
because the duty was not exercised correctly, or
because there. was no authority to act whatever,
the acts beyond or in breach of public duty may
also constitute a breach of duty to those proxi-
mately harmed thereby,[32] as with a sheriff's execu-
tion of process invalid on its face.[33] In the second
case, the authority conferred does not, as with
ministerial duties, relate to a particular result but
to the very act of exercising discretion. By defini-
tion, where there is discretionary power, the power

---

for the allowance are liable, the first question which arises is,
whether the nature of their duties is judicial, or ministerial only; for
the rule of liability is altogether different in the two cases. A ministe-
rial officer has a line of conduct marked out for him, and has nothing
to do but to follow it; and he must be held liable for any failure to do
so which results in the injury of another. A judicial officer, on the
other hand, has certain powers confided to him to be exercised
according to his judgment or discretion; and the law would be oppres-
sive which should compel him in every case to decide correctly at his
peril. It is accordingly a rule of very great antiquity that no action
will lie against a judicial officer for any act done by him in the
exercise of his judicial functions, provided the act, though done
mistakenly, were within the scope of his jurisdiction: (Citations omit-
ted.) This principle of protection is not confined to courts of record,
but it applies as well to inferior jurisdictions; the only difference
being that authority in a court of general jurisdiction is to be
presumed, while the jurisdiction of inferior tribunals must affirma-
tively appear on the fact of their proceedings: (Citations omitted.) Nor
does the rule depend upon whether the tribunal is a court or not; it is
the nature of the duties to be performed that determines its applica-
tion." (Citations omitted.)

[32] This is not to say that every act by a public officer which is
without authority or in breach of a public duty is at once a breach of
a duty to anyone proximately harmed thereby. It is to say that the
responsibility of the public officer is no different than that of anyone
else save where his complained-of conduct is expressly sanctioned, or
privileged, by law.

[33] So too, the drain commissioner's unlawful payments in *People for
use of Lapeer County Bank v O'Connell,* 214 Mich 410; 183 NW 195
(1921), the acts of the village marshall in *Rogers v Randall,* 29 Mich
41 (1874), and the street commissioner in *Jordan v Thorp,* 142 Mich
515; 105 NW 1113 (1905), or the tax collector's false return in
*Raynsford v Phelps,* 43 Mich 342; 5 NW 403 (1880).

of choice, its exercise can neither be right nor wrong.

The difficult question herein relates to the definition of discretionary powers, particularly in view of three recent decisions involving questions of personal liability of governmental officials, *Rose, Lovitt* and *Walkowski, supra.* While it is not difficult to visualize the exercise of discretionary powers in the legislative and judicial branches of government, the quotation from *Williams v Detroit, supra,* p 261, also speaks of executive acts or decisions as being free from tort liability, seemingly contemplating something more than the immunity of an officer properly performing a ministerial duty. If so, we think it important to narrowly limit the discretionary acts of executive and administrative officers for which they will be immune from tort liability, for as between the claim of the public officer for immunity from the consequences of his acts and that of the individual for what Justice CAMPBELL referred to as the "immunity" of private persons and property from improper governmental interference,[34] the latter should prevail unless the harm complained of has resulted from the performance of a clearly defined public duty. There is that class of cases, of course, in which the officer is acting in a quasi-judicial fashion, noted *supra,* fn 26.[35] There is another class

---

[34] "The idea, therefore, that a corporate body has a discretionary power to do wrong and not suffer for it, is not in harmony with any safe principle. There may be certain cases where is, of necessity, a final discretion; but there can be no absolute discretionary power over private persons or property. They are assured by the law of the land against any improper interference, and no public authority exists which can authorize their immunity to be taken away." CAMPBELL, J. *Sheldon v Village of Kalamazoo,* 24 Mich 383, 385–386 (1872).

*And see Tocco v Piersante,* 69 Mich App 616; 245 NW2d 356 (1976).

[35] It is difficult to believe that there may exist similar quasi-legislative powers except in the parliamentarian philosophical argument that all governmental power is inherently legislative in nature. We do

of cases in which the officer is given a clearly
defined power to exercise alternate choices in his
discretion in a particular situation.[36] Beyond that
we have more difficulty.

It seems too simplistic and far too broad a
construction of discretionary powers to label the
duties of public officers as either ministerial or
discretionary.[37] To conclude that in all areas where
a public officer's conduct is not precisely ordered
by law (ministerial), he is therefore endowed with
discretionary power would be erroneous and au-
thoritarian. In the vast governmental operations
that affect us all today, most of what happens (or
does not happen) is not the result either of minis-
terially-rote acts or of the exercise of discretionary
powers. To do one's job, to be efficient and expedi-
tious,[38] to assume varying degrees of responsibility
in the echelon of administration and supervision,
to make decisions for the implementation of objec-
tives, and even in some cases to determine those
objectives, may involve the exercise of judgment
but not of discretionary powers. The discretionary

note that much of the public works detail planning cloaked in
immunity as legislative by early cases is now routinely performed by
executive officers, but we think that is not so much that they are
performing legislative duties as that those cases unduly strained the
idea of legislative functions, *e.g. Larkin v County of Saginaw, supra,
Detroit v Beckman, supra* and *Lansing v Toolan,* 37 Mich 152 (1877).

[36] *See Longstreet v County of Mecosta, supra,* where a bridge had
been washed out on a trunk line highway. Among the nonliable
defendants was the state highway commissioner who at that time was
expressly given the discretion under § 5 of the Trunk Line Highway
Act either to proceed with work projects or to await the raising of
funds.

[37] Thus, the writer's view that *Walkowski,* in reaching a right result
by unnecessarily applying an immunity doctrine, dangerously ex-
panded the definition of discretionary powers. The negligence charged
was in coding a computer, a task which the writer cannot consider to
be one of the magnitudinous governmental policy decisions worthy of
being called a discretionary executive power.

[38] Assuming that the affairs of any organization of governmental
size can be conducted efficiently and expeditiously.

powers with which we are concerned involve some-
thing more than the exercise of judgment, however
responsible or high in government the officer may
be placed. We are accustomed to measuring judg-
mental decisions involving harmful consequences
by the standard of the reasonably prudent man.
Rather, we think, discretionary executive power
contemplates only such major policy decisions as
are specifically entrusted to the officer by the
constitution or act of the Legislature. So, *Williams*
spoke of "the great powers of decision making"
given to government by the people. And *Sherbutte*
merely quoted *Williams* and added:

"We think it unnecessary to expatiate on the point. The
action of a police officer in making an arrest cannot be
considered within the broad scope of the discretion
allowed a free government in its legislative, executive,
or judicial branch."[39]

Another look at *Rose, Walkowski* and *Lovitt* is
in order. In *Rose v Mackie,* it was alleged that a
highway was unsafely designed so that a danger-
ous condition was created where it reduced from
three lanes to two lanes with insufficient warning
thereof. Count I of the complaint alleged a supervi-
sory duty on the part of defendant over the high-
ways, negligently breached by allowing the road to
remain unsafe "after due notice to his agents",
while Count II alleged negligent design and failure
to change the same after knowledge that it was
hazardous. The Court's reasoning in striking down
the second count was that the commissioner's
public duty to design and maintain highways en-
tailed no private duty to any individual member of

[39] 374 Mich 48, 55.

the public, citing *Raynsford v Phelps*.[40] The Court
disposed of Count I summarily, however, saying
that since the state is "immune from liability for
negligence, the defendant as highway commis-
sioner is also immune", 22 Mich App at 466, with
which rationale we have noted our disagreement.
But the result was correct for we see no reason
why the Court's reasoning as to Count II would
not be equally applicable to Count I. Moreover, we
think it tolerably clear that one charged with
administrative and supervisory duties, public or
private, is not thereby liable, *respondeat superior,*
for the negligence of employees subject to his
authority. Negligence of an agent may be imputed
to a principal, not to another agent.[41] Both counts
of the *Rose* complaint, then, failed to allege facts
upon which personal responsibility of the commis-
sioner could be founded, either as to duty or as to
negligent breach thereof.

What has been said of *Rose* is equally true of
*Lovitt v Concord School District* and *Walkowski v
Macomb County Sheriff* in so far as they dealt
with the question of responsibility of public officers
for acts of those over whom they had supervisory
control. There was no reason for discussion of
immunity, for the wrongs complained of were not
alleged to have resulted from the acts of the
supervisory officer,[42] and the supervisory officer

[40] *Supra,* fn 33, which held a public officer liable for breach of a
ministerial duty in which a private person has a "special and direct
interest", *Rose* thus inferentially holding that highway design in-
volved no such special and direct private interest. The Court also
cited *Massengill v Yuma County,* 104 Ariz 518; 456 P2d 376 (1969),
which came to a similar conclusion as a matter of absence of duty to
the injured party and not as a matter of immunity.

[41] Contrary to the language in the *Rose* complaint alleging notice to
the commissioner's agents, they were not his agents but agents of the
state.

[42] But had the complaint in *Lovitt* alleged circumstances showing a
personal duty from the administrators to the students and breach

was not responsible, *respondeat superior,* for the negligent acts of the lower level employee.

So it is in the instant case with regard to the defendant school superintendent. The question of immunity is not involved. We are unable to discern in the complaint any allegations of personal neglect on his part[43] and the negligence of the teacher is not imputed to him merely because he is in a superior and supervisory position.

As to the defendant teacher, she, like the teachers in *Lovitt,* is charged by the complaint with personal negligence in the conduct of her class, both in acts of omission and commission, including conducting the class under inadequate and unsafe conditions, allowing storage of alcohol in a damaged container, leaving spilled alcohol exposed to ignition sources, failure to properly handle and store the alcohol when open flame lamps were in use proximate thereto, and failure to warn and supervise the students in handling alcohol and flame. We think there is a fact issue for the jury as to the conclusions that may be drawn regarding her conduct.

As to the defendant principal, we reach the same result, not because of the allegations of in-class negligence of the teacher, but because of the risks inherent in conducting a class of this kind in a room which is not equipped for the purpose. As principal of the high school, curriculum, schedul-

thereof, such as direct participation in, the ordering of or the knowing approval of the teacher misconduct, it would have stated a good cause of action against them even though the school district would have remained immune. Such conduct could not be deemed governmentally sanctioned or ordered.

[43] If the complaint can be construed as charging the superintendent and not the high school principal alone with responsibility for disconnecting the building fire alarm system, it is clear from the pleadings and depositions that this was not a proximate cause of plaintiff's injuries.

ing and room assignments would not only be within his knowledge but his direct responsibility. The removal of the class from the laboratory to the mathematics room was his responsibility. He must be presumed to know the nature of the class, that it would involve chemicals, fumes, alcohol and open flame alcohol lamps, and that the room to which the class was transferred had no vents or any of the safety features of the laboratory. We cannot say that all reasonable men would agree that no negligence could be inferred under these circumstances; that question must be left to the jury.

These acts of the individual defendants cannot be imputed to the school district under the governmental immunity act since classroom activity is clearly the governmental function for which schools exist. The question, however, is whether the complaint states a cause of action[44] under § 6 of the act wherein the state imposes a duty on all governmental agencies to keep public buildings safe for the users thereof and waives immunity from liability for breach thereof:

"Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building * * * ". MCLA 691.1406; MSA 3.996(106).

What must be "wrong" with a public building to make injuries caused thereby actionable? Clearly that which is operably defective, out of repair or

---

[44] The complaint alleges that there were certain features of the chemical laboratory not present in the classroom which was being used as a laboratory, *i.e.,* safety shower, exhaust vents, segregated chemical storage area, fixed desks and gas outlets.

improperly maintained is actionable.[45] Further, unless the injury producing thing is a part of the building proper, in the classic distinction between real and personal property, there is no cause of action under § 6.[46]

Likewise, if the injury is caused by activities within the building rather than by a defect of the building itself, the injury is not actionable.[47] This statement, however, is more easily enunciated than applied, for nothing in a building is ordinarily dangerous except with regard to the building's use, and the activities within it. An insecure railing is not dangerous save as people use the stairs. Where there is such use, is the stairway any less dangerous if, instead of a defective railing, it has no railing whatever? There are, thus, some cases, described in *Zawadzki v Taylor, supra,* fn 46, as "failure to provide" cases, in which it may be said that a defective or dangerous condition exists in a building, otherwise sound and well maintained, because of the lack of something that would have prevented the complained-of injury.

So, in *Smith v Clintondale School District, supra,* fn 44, the absence of the customary latching mechanism on a commode door, freeing it to swing

---

[45] *Smith v Clintondale School District,* 14 Mich App 153; 165 NW2d 332 (1968) (a commode door on which the latch mechanism had been removed), *e.g., Jackson v Detroit Board of Education,* 18 Mich App 73; 170 NW2d 489 (1969) (a defective door closing mechanism), *Friedman v Farmington Township School District,* 40 Mich App 197; 198 NW2d 785 (1972) (a waxed floor).

[46] No cause of action: *Cody v Southfield-Lathrup School District,* 25 Mich App 33; 181 NW2d 81 (1970) (an unaffixed trampoline), *Pichette v Manistique Schools, supra* (a playground slide), *Knapp v City of Dearborn, supra,* (an outdoor pump). A cause of action: *Green v Department of Corrections,* 30 Mich App 648; 186 NW2d 792 (1971), *affirmed,* 386 Mich 459, 192 NW2d 491 (1971) (an affixed planing machine).

[47] *Cody v Southfield-Lathrup School District, supra* (trampoline exercises), and *Zawadzki v Taylor,* 70 Mich App 545; 246 NW2d 161 (1976) (indoor tennis).

unexpectedly in both directions, was considered to constitute a dangerous or defective condition of the building. In *Green v Department of Corrections, supra,* fn 45, the Court of Appeals found "defects in a public building" where an affixed planing machine lacked proper safety devices (protective shield and safety switch). Neither case, however, turned on an analysis of the statute and, indeed, all of the cases until *Lockaby v Wayne County,* 63 Mich App 185; 234 NW2d 444 (1975), and *Zawadzki,* assumed without discussion that the condition complained of constituted a dangerous or defective condition under the statute. Both *Lockaby* and *Zawadzki* concluded that the absence of safety devices or equipment did not, on the facts of those cases, constitute dangerous or defective conditions of the public buildings involved. The lack of precedent and elusive nature of the problem is evident from the decisions.

In *Lockaby,* plaintiff was jailed, evaluated as having a mental problem, confined in a segregated ward of the jail designated for inmates with such problems and allegedly received injuries from running into a wall. In a split decision, the Court's majority held that the failure to provide a padded cell did not create "a dangerous condition" within the meaning of the statute. The cell padding which wasn't there wasn't part of the building, citing *Cody.* The dissent said that bare walls and iron bars were there, were part of the building, were dangerous to mental patients, and emphasized that the statute authorizes actions not merely for injuries from defective conditions but from dangerous conditions.

*Zawadzki* arose from the adaption of a school gymnasium to tennis courts. Plaintiff, using one court, suffered an eye injury when struck by a

mishit ball from the adjoining court, and argued unsuccessfully that the absence of netting or other screening between the courts constituted a defective or dangerous condition. The Court stated the controlling question as "whether the *absence* of a safety device can be a 'dangerous or defective condition' within the meaning of the statute",[48] concluding that it could only if "the danger causing the injury resulted from a condition of the building itself rather than resulting from the activities or operations conducted within the building". Failures to provide ordinary and usual building components or safety devices such as handrails on stairways, doors on elevators or locking devices on windows were noted by the Court as examples that would fall within the statute, and which create risk of harm in the ordinary contemplated use of the building. We would add that as to particular uses or activities for which a public building, or a part thereof, is specifically assigned, failure to provide the usual building components and safety devices appropriate to such contemplated use would be actionable under the statute.

This does not mean that everything possible must be built in to prevent injury, or to make injury less likely or less serious. So, in the instant case, safety showers might have reduced injury from the events which happened, but the explosion did not happen because of their absence. Notwithstanding the lack of exhaust vents, fixed desks with gas outlets and a segregated chemical storage area in the classroom, the class could have been safely conducted by proper supervision. Rather than stating facts indicating an inherently danger-

---

[48] 70 Mich App at 550. The Court explained *Smith* (the door without a latch) and *Green* (the planer without a safety shield or switch) as cases where "the missing equipment was or had become a structural part of the building itself".

ous condition of the building for the contemplated use, the complaint alleges a course of classroom conduct which would be dangerous even in a properly equipped laboratory. We accordingly find that the grant of summary judgment was proper as to the school district.

Remanded accordingly, with costs to plaintiff.

BRONSON, J. *(concurring).* I agree with the *results* reached in both of the opinions filed by my brothers in this case, but find myself in the position of being unable to sign either opinion. I leave the task of forging precedent in this area to the Supreme Court.

As the author of *Walkowski v Macomb County Sheriff,* 64 Mich App 460; 236 NW2d 516 (1975), I cannot join in Judge WILLIAM R. PETERSON's discussion of the underpinnings, rationale and scope of the doctrine of immunity from tort liability as it protects individual public officials.

I do agree that plaintiffs' complaint fails to state any claim against the defendant school superintendent upon which relief can be granted and that the question of whether he would be protected by governmental immunity need not be considered.

I agree that plaintiffs' complaint does allege personal, actionable negligence on the part of the defendant teacher and the defendant principal. I concur with Judge KELLY's conclusion that neither of these defendants was involved in the performance of "discretionary acts" as that phrase has been used to define the scope of governmental immunity for public officials and that the trial court therefore erred in granting summary judgment in favor of these defendants.

Finally, I concur in that part of Judge PETERSON's opinion which discusses the "public building"

exception to the statutory immunity of the school
district and with the reasons which he gives in
support of the conclusion that there is no such
liability in this case.